**GULF LIFE INSURANCE COMPANY,
a Florida Corporation,
Plaintiff-Appellant,**

v.

**Carl J. ARNOLD, An Individual residing
in the State of Tennessee,
Defendant-Appellee.**

No. 86–3258.

United States Court of Appeals,
Eleventh Circuit.

Feb. 13, 1987.

---

K. Alexandra Krueger, Rogers, Towers, Bailey, Jones & Gay, Jacksonville, Fla., for plaintiff-appellant.

Dudley D. Allen, Wilbur & Allen, Jacksonville, Fla., Arnold A. Stulce, Jr., C.E. Shiles, Hatfield, Van Cleave & Stulce, Chattanooga, Tenn., for defendant-appellee.

Before RONEY, Chief Judge, EDMONDSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

This case presents a question of interpretation of the Employee Retirement Income Security Act. 29 U.S.C.A. secs. 1001–1461 (ERISA). We are asked whether a fiduciary[1] may invoke ERISA's liberal venue provision, 29 U.S.C.A. sec. 1132(e)(2), when the fiduciary files a declaratory judgment action seeking to determine its liability for benefits claimed by a former employee who was a participant in the fiduciary-employer's ERISA-qualified employee benefit plan. We conclude that a fiduciary may not avail itself of the broad venue provision in such a setting and therefore affirm the district court's order dismissing the case for want of personal jurisdiction.

Defendant-appellee Carl J. Arnold filed a claim for severance benefits from his former employer, plaintiff-appellant Gulf Life Insurance Company, pursuant to Gulf Life's ERISA-qualified employee benefit plan. Rather than denying Arnold's claim—which it believed to be invalid—and thereby allowing Arnold the option to file suit demanding payment under the plan, Gulf Life instead brought suit in federal district court seeking a declaration of its liability. By taking such action, Gulf Life hoped to litigate the case in Florida, where Gulf Life's principal place of business is located and where the plan is administered, rather than in Tennessee, where Arnold worked for Gulf Life and where he resides. Gulf Life maintains that it is able to haul Arnold into federal district court in Florida by means of ERISA's liberal venue provision. See 29 U.S.C.A. sec. 1132(e)(2).

Arnold moved to dismiss the suit, arguing that the district court lacked personal jurisdiction. The United States District Court for the Middle District of Florida held (1) that ERISA's liberal venue provision, section 1132(e)(2), was enacted to benefit plan participants/beneficiaries, (2) it thus was not available to Gulf Life to use against Arnold, and (3) under traditional personal jurisdiction analysis, Arnold did not have sufficient contacts with Florida to trigger jurisdiction. The district court therefore dismissed the case. Gulf Life appeals that decision.[2]

■ As a threshold matter, when faced with a question of statutory interpretation, our starting point must be the language of the statute; we must assume that Congress intended the ordinary meaning of the words it used; and absent a clearly expressed legislative intent to the contrary, that language generally is dispositive. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *United States v. Anderez*, 661 F.2d 404, 406 (5th Cir.1981) (Unit B).[3]

ERISA's venue provision can provide broad access to the federal courts:

(2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and

---

1. We assume without deciding that Gulf Life qualifies as a "fiduciary" under ERISA. *See* 29 U.S.C.A. sec. 1002(21).

2. Gulf Life does not contest the district court's conclusion that Arnold has insufficient contacts with Florida. Instead, Gulf Life maintains that it may avail itself of ERISA's broad venue statute that allows nationwide service of process. *See* 29 U.S.C.A. sec. 1132(e)(2).

3. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit.

process may be served in any other district where a defendant resides or may be found.

29 U.S.C.A. sec. 1132(e)(2). As the quoted section states, however, nationwide service of process is available only if the suit is "an action under *this subchapter*"; i.e., "Subchapter I—Protection of Employee Benefit Rights."

To demonstrate that its suit is "an action under this subchapter," Gulf Life contends that its declaratory judgment suit arises under 29 U.S.C.A. sec. 1132(a)(3). Actions under that statute may seek either an injunction, section 1132(a)(3)(A), or "other equitable relief", section 1132(a)(3)(B).[4] Gulf Life's declaratory judgment action did not seek an injunction; therefore, the question is whether the suit sought "other equitable relief ... to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C.A. sec. 1132(a)(3)(B)(ii). We hold that the suit was not one for "equitable relief"; nor was it an action "to enforce" the plan or the subchapter.

■ Suits for declaratory judgment are a statutory creation enacted by Congress in the Declaratory Judgment Act, 28 U.S.C.A. secs. 2201–02, and are neither inherently legal nor equitable in nature. *American Safety Equip. Corp. v. J.P. Maguire & Co.*, 391 F.2d 821, 824 (2d Cir. 1968). When determining whether a declaratory judgment action is legal or equitable, "courts have examined the basic nature of the issues involved to determine how they would have arisen had Congress not enacted the Declaratory Judgment Act." *Wallace v. Norman Indus., Inc.*, 467 F.2d 824, 827 (5th Cir.1972);[5] *United States v. New Mexico*, 642 F.2d 397, 400 (10th Cir.1981); *Diematic Mfg. Corp. v. Packaging Indus., Inc.*, 516 F.2d 975, 978 (2d Cir.), *cert. denied*, 423 U.S. 913, 96

S.Ct. 217, 46 L.Ed.2d 141 (1975); *American Safety, supra; Chevron, U.S.A., Inc. v. Oubre*, 93 F.R.D. 622, 623 (M.D.La.1982); *see generally Hartford Financial Systems v. Florida Software Serv.*, 712 F.2d 724, 726–27 (1st Cir.1983). But for the Declaratory Judgment Act, the only way this action could have arisen is as a suit by Arnold to collect the severance pay he claims he is due—a legal, not equitable, action. Thus, Gulf Life's declaratory judgment action was not a civil action seeking "equitable relief."

■ It also is clear to us that Gulf Life's suit does not seek "to enforce" the subchapter or the terms of the plan. "The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties as to whom Congress presumably determined the right to enter federal court was necessary to further the statute's purposes." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21, 103 S.Ct. 2840, 2852, 77 L.Ed.2d 420 (1983). Gulf Life's declaratory judgment action simply is unnecessary to further the statute's purpose. The purpose essential to section 1132(a)(3)(B) is to enforce the terms of the plan or ERISA; all Gulf Life need do to enforce the terms of the plan, assuming it contends the claim for benefits is invalid, is deny payment. Moreover, an action "to enforce" means an action to compel someone to do something or not to do something, such as make contributions, that ERISA or the plan requires be done or not done. *See Carpenters Amended & Restated Health Benefit Fund v. Ryan Constr. Co.*, 767 F.2d 1170 (5th Cir.1985). *See generally* Black's Law Dictionary 474 (5th Ed.1979) ("enforce" means "to compel obedience to"). Gulf Life's action is defensive in nature; the company simply wishes to avoid making payment that Arnold

---

**4.** 29 U.S.C.A. sec. 1132(a)(3) states that a participant, beneficiary or fiduciary may bring a civil action

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such

violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

**5.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

claims is due. Seeking a declaration of its liability does not "enforce" the plan.

■ A reading of the other subsections of section 1132 makes it even clearer that Congress did not intend ERISA fiduciaries to use declaratory judgment actions to determine the benefit rights of participants/beneficiaries. Section 1132 is essentially a standing provision: it sets forth those parties who may bring civil actions under ERISA and specifies the types of actions each of those parties may pursue. These standing provisions must be construed narrowly; civil actions under ERISA are limited only to those parties and actions Congress specifically enumerated in section 1132. *See Franchise Tax Bd.*, 463 U.S. at 21, 27, 103 S.Ct. at 2852, 2855; *Northeast Dept. ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 152–54 (3d Cir.1985). *See generally American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (reviewing court is bound by statute's unambiguous language).

■ Congress stated in section 1132(a)(1) that a participant or beneficiary could bring a civil suit not only to recover benefits, but also "to clarify his rights to future benefits under the plan." 29 U.S.C.A. sec. 1132(a)(1)(B).[6] Obviously, this section expressly acknowledges the right of participants/beneficiaries to seek a declaratory judgment; just as obviously, fiduciaries are omitted as parties that can bring such an action regarding benefits. This omission is significant.

Under Gulf Life's view, participants, beneficiaries *and* fiduciaries could bring a suit for declaratory judgment under section 1132(a)(3) to clarify a participant's/beneficiary's rights to benefits. That interpretation would usurp the language of section 1132(a)(1)—in which Congress limited such actions solely to participants and benefi-

ciaries—and thereby render section 1132(a)(1) meaningless, or at least redundant. Absent clear congressional intent to the contrary, we will assume the legislature did not intend to pass vain or meaningless legislation. *See General Motors Acceptance Corp. v. Whisnant*, 387 F.2d 774, 778 (5th Cir.1968) (reviewing court must look at statute as a whole so that its various parts function as a consistent whole; court will not presume "that the legislature intended any part of a statute to be without meaning."); *Rittenberry v. Lewis*, 222 F.Supp. 717, 719 (E.D.Tenn.1963) ("The legislature will not be presumed to have done a useless and vain thing.").

Thus, ERISA's language compels us to conclude: Gulf Life may not maintain this action under section 1132(a)(3)(B); Gulf Life's suit is not "an action under this subchapter", i.e., 29 U.S.C.A. sections 1001–1145; and Gulf Life may not avail itself of section 1132(e)(2)'s venue provisions.

Although we base our holding on our understanding of the words Congress chose to use in the statute, we also note that ERISA's stated purpose and its legislative history firmly support our conclusion. Section 1001(b) of Title 29 declares that it is "the policy of this subchapter to protect ... the interests of participants in employee benefit plans and their beneficiaries ... by providing ... ready access to the federal courts." Congress intended "to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities.... For actions in federal courts, nationwide service of process is provided to remove a possible procedural obstacle to having all parties before the court." H.R.Rep. No. 93–533, 93d Cong., 1st Sess. 17 (1973), U.S.Code Cong. & Admin.News 1974, pp. 4639, 4655.

---

**6.** 29 U.S.C.A. sec. 1132(a)(1)(B) provides:

A civil action may be brought—

 (1) by a participant or beneficiary—

. . . . .

 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

Were we to adopt Gulf Life's view, the sword that Congress intended participants/beneficiaries to wield in asserting their rights could instead be turned against those whom it was designed to aid.[7] This inconsistent result would arise from the administrative procedures that a claimant must follow before he can bring suit in the federal courts. "For purposes of ERISA a cause of action does not accrue until an application [for benefits under the plan] is denied." *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357, 361 (5th Cir.Feb.1981), *cert. denied*, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *see Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1297, 1300–03 (5th Cir.1985); *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980). Under Gulf Life's interpretation, a fiduciary therefore would always have an ample opportunity to defeat efforts by participants/beneficiaries to avail themselves of ERISA's broad venue provision; all the fiduciary need do in cases it intended to contest is file a declaratory judgment action in the district where the plan is administered and then, pursuant to section 1132(e)(2), serve the defendant participant/beneficiary in the district where he lives.[8] Such a procedure would stand ERISA's unequivocal purpose on its head.[9]

Accordingly, in light of the plain meaning of Congress's words as well as our understanding of Congress's purpose, Gulf Life in this case cannot avail itself of the liberal venue statute provided in 29 U.S. C.A. sec. 1132(e)(2). Therefore, the judgment of the district court is AFFIRMED.

---

7. For example, under Gulf Life's view of section 1132, if Gulf Life were headquartered in Guam it would be able to force Arnold to litigate his benefit plan rights in that forum. Although this states the case in its most extreme, it is not unusual for a national corporation to be headquartered in New York or in California. We believe that ERISA's legislative history unquestionably demonstrates that Congress did not intend to allow a fiduciary to force a plan participant/beneficiary who worked for a company for 30 years in Maine and who files a claim for benefits with that company, to be required to litigate his claim in Los Angeles.

8. It may be true that the participant/beneficiary in such a position could move for a change of venue. While it may be that such motions generally would be granted, it also may be that district courts would deny such motions for any number of reasons. For example, the fiduciary could maintain, as Gulf Life does, that the records and many of the witnesses are located where the fiduciary administers the plan and that removal is improper. Furthermore, even if the change of venue were granted, the participant/beneficiary would have had the additional expense, time and aggravation of litigating the change of venue motion in a distant forum.

9. We note that section 1132(e)(2) and section 1132(a)(3) both indicate they are designed to facilitate "this subchapter," and that the subchapter in question is entitled "Protection of Employee Benefit Rights." Gulf Life's position, were it to prevail, would tend to harm rather than protect employee benefit rights.