David W. REYNOLDS, Great Northern Nekoosa Corporation, and Georgia–Pacific Corporation, Petitioners,

v.

Charles W. STAHR and Edwin Nyberg, individually and as representatives of a class, Respondents.

No. 91–C–6–S.

United States District Court, W.D. Wisconsin.

March 21, 1991.

England, Weaver & Kytle by George M. Weaver, Alston & Bird by Peter Q. Bassett, Atlanta, Ga., DeWitt, Porter, Huggett, Schumacher & Morgan, Madison, Wis. by John Koeppl, Verona, Wis., for petitioners.

Stafford, Rosenbaum, Rieser & Hansen by Richard A. Hollern, Madison, Wis., for respondents.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Petitioners David W. Reynolds and Great Northern Nekoosa Corporation are the fiduciary and sponsor, respectively, of an employee welfare benefit plan known as the GNN Employee Protection Plan, which is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132, *et seq.* Petitioner Georgia–Pacific Corporation is the parent corporation of Great Northern Nekoosa and has contractually agreed to guarantee obligations under the plan. Petitioners commenced this action for a declaratory determination that the plan is not liable to pay certain claims to employee participants. Petitioners have named Charles W. Stahr and Edwin Nyberg, employees and participants under the Plan, as respondents and also seek certification of a class of similarly situated employee participants.

The action is presently before the Court on respondents' motion to dismiss for lack of subject matter jurisdiction, or alternatively, to abstain from exercising jurisdiction.

The following is a summary of facts which are undisputed for purposes of this motion.

## FACTS

On November 12, 1989, Great Northern Nekoosa adopted the GNN Employee Pro-

tection Plan, which applies to certain employees of Great Northern Nekoosa and its subsidiaries. Section A of the plan provides:

*Purpose*

To provide reasonable financial protection to all full-time salaried employees who are employed by the Company at the time of a Change of Control (as defined in Article J) and are not covered by collective bargaining agreements or an individual employment agreement providing for severance or salary continuation payments following termination of employment after a Change of Control (such employee hereinafter referred to as a "Covered Employee").

Section D of the plan provides:

The Employee Protection Plan shall provide benefits only if there is a Change of Control and shall apply to a Covered Employee whose employment is terminated within two years of such Change of Control under the following circumstances:

 *  *  *  *  *  *

3. The employee experiences an involuntary termination of employment for other than just cause. Just cause is defined as an act or acts of dishonesty that constitutes a felony and results in personal enrichment at the expense of Great Northern Nekoosa Corporation and its business units.

Section F of the plan provides:

... If a Covered Employee in good faith institutes any legal action in seeking to obtain or enforce, or is required to defend in any legal action, the validity or enforceability of any right or benefit provided by this Plan, the Company will pay for all reasonable legal fees and expenses actually incurred by such employee.

The plan further provides for payment of a severance benefit in a lump sum in cash no later than ten days after termination of employment. The Plan provides that the Vice-President, Employee Relations, GNN, (petitioner Reynolds) is responsible for interpretations of the Plan.

On or about March 6, 1990, petitioner Georgia–Pacific, through a wholly-owned subsidiary, acquired approximately 96.5 percent of the outstanding shares of Great Northern Nekoosa common stock. This acquisition constituted a "Change of Control" under the terms of the Plan.

Nekoosa Packaging, NP Woodlands, and Nekoosa Papers are wholly-owned subsidiaries of Great Northern Nekoosa. These subsidiaries own paper mills, corrugated paper converting operations, and timberlands. On September 26, 1990, these corporations and Georgia–Pacific contracted to sell certain assets to Tenneco, Inc., Packaging Corporation of America, and certain other parties. The asset sale included two paper mills, one at Tomahawk, Wisconsin, and one at Valdosta, Georgia, as well as various corrugated paper converting operations and timberland located in the States of Wisconsin, Pennsylvania, Indiana, North Carolina, South Carolina, Georgia, Florida and California.

Respondents Stahr and Nyberg were managers at the Tomahawk Paper Mill at the time of the asset sale and are Covered Employees under the Plan. Respondents were employees of Great Northern Nekoosa through January 30, 1991. On January 31, 1991, respondents, after filing written applications for employment, became employees of Packaging Corporation of America.

Prior to the consummation of the asset sale, petitioner Reynolds received in excess of 100 written claims from members of the proposed class to recover severance benefits under the Plan, including benefits under § D.3 of the Plan, for alleged involuntary termination of employment.

On January 3, 1991, petitioner Reynolds issued a decision to all Plan participants determining that the asset sale and subsequent change of employer by the participants did not constitute an involuntary termination of employment entitling them to severance benefits within the meaning of the Plan. On the same day petitioners commenced this action.

On March 1, 1991, respondents Stahr and Nyberg, together with other employees

from facilities sold in the asset sale, commenced an action against the petitioners in the United States District Court for the Middle District of Georgia, seeking a recovery of benefits under the Plan pursuant to ERISA, 29 U.S.C. § 1001, *et seq.* The Georgia action mirrors the action presently pending here.

## MEMORANDUM

Respondents seek dismissal of petitioners' action for lack of subject matter jurisdiction. Petitioners allege jurisdiction based upon the existence of a federal question under 28 U.S.C. § 1331. Petitioners allege that jurisdiction is appropriate under the Declaratory Judgment Act, 28 U.S.C. § 2201, because the underlying issue raised by the petition is resolved under federal statutory and common law under ERISA. Alternatively, petitioners assert that jurisdiction is directly authorized as an action pursuant to § 502(a)(2) or (3) of ERISA, 29 U.S.C. § 1132(a)(2) and (3). Respondents urge that the present action falls outside the statutorily prescribed actions in § 502 of ERISA and the Declaratory Judgment Act does not extend jurisdiction beyond that prescribed by the statute.

■ The issue of whether a fiduciary may properly seek a determination under § 502(a) of the right of a claimant to benefits has not been addressed by the Seventh Circuit Court of Appeals. However, the question has been addressed by the Ninth and Eleventh Circuits, both of which have determined that a fiduciary may not maintain such an action. *Transamerica Occidental Life Ins. Co. v. Digregorio,* 811 F.2d 1249 (9th Cir.1987), *Gulf Life Ins. Co. v. Arnold,* 809 F.2d 1520 (11th Cir.1987). The court in *Transamerica* also addressed the availability of a declaratory judgment action under these circumstances, concluding that such an action was available. 811 F.2d at 1253. The Court finds the reasoning of *Gulf Life* and *Transamerica* to be persuasive, and adopts their conclusions.

### A. Section 502

Petitioners base jurisdiction on § 502(a) of ERISA, 29 U.S.C. § 1132(a). That section provides in relevant part:

(a) A civil action may be brought—

(1) By a participant or beneficiary—(A) For the relief provided for in subsection (c) of this section, or (B) To recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) By the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under § 409;

(3) By a participant, beneficiary, or fiduciary (A) To enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) To obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan ...

It is apparent that petitioners cannot assert an action under § 502(a)(1) since they are neither participants nor beneficiaries. It is equally apparent that they cannot successfully assert an action pursuant to § 502(a)(2), which refers to a suit for appropriate relief under § 409. Section 409 provides for liability of fiduciaries in a suit for breach of fiduciary duty. There is no suggestion that petitioners' suit in any way seeks liability for breach of fiduciary duty; consequently, that section is inapplicable.

Similarly, § 502(a)(3)(A) is inapplicable since the petition does not seek to enjoin any act or practice which violates any provision of this title or the terms of the plan. If the action seeks to enjoin anything, it is the filing of claims by the petitioners which is surely not in violation of ERISA or the Plan. Accordingly, the sole issue is whether petitioners' claim falls within § 502(a)(3)(B)(ii) which permits an action "to obtain other appropriate equitable relief to enforce any provisions of this title or the terms of the Plan." *Gulf Life* and *Transamerica* concluded that an action by a fiduciary to determine the eligibility of a claimant for benefits under circumstances of this case is neither an action for "equitable relief" nor an action to "enforce

any provisions of this title or the terms of the Plan."

### 1. Equitable Relief

██ The petitioners' claim in this case is one for declaratory relief. "Declaratory judgments are neither 'legal' nor 'equitable.'... To tell how to classify these beasts, we must evaluate the underlying claim." *Employers Ins. of Wausau v. Shell Oil Co.*, 820 F.2d 898, 900–901 (7th Cir.1987). In this case the underlying claim is a claim for benefits which could be brought by the respondents against the Plan. Both *Transamerica* and *Gulf Life* concluded that an action by a beneficiary for benefits under the Plan constitutes a legal, and not an equitable cause of action. 811 F.2d at 1252; 809 F.2d at 1523.

Petitioners argue that the Seventh Circuit Court of Appeals would not follow the Ninth and Eleventh Circuits since it has determined that "suits for pensions benefits by disappointed applicants are equitable." *Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d 820, 829 (7th Cir.1980). However, a more complete examination of *Wardle* reveals that the Seventh Circuit would find the present claim for benefits to be legal:

> This conclusion has been based primarily on the law of trusts, which provides a beneficiary with *a legal remedy only with respect to money the trustee is under a duty, if successful, to pay unconditionally and immediately* to the beneficiary.

*Id.* (Emphasis added.) The claim for benefits under the plan would result in an immediate lump-sum cash payment of the severance amount. Accordingly, under the standard established by the Seventh Circuit in *Wardle* the claim would be "legal." It has been recognized by at least one other district court in this circuit that ERISA claims are "legal" where they seek unconditioned and immediate payment. *Ovitz v. Jefferies & Co., Inc.*, 553 F.Supp. 300 (E.D. Ill.1982).

### 2. Enforcement

██ Even assuming that the claim was "equitable," it clearly does not seek "enforcement" of ERISA or the terms of the Plan. Respondents properly note that the term "enforce" used in its ordinary sense does not encompass an action to determine the propriety of a denial of benefits. The term "enforce" implies that someone will be compelled to abide by the terms of ERISA or the Plan. *See Gulf Life*, 809 F.2d at 1523. A determination of future ineligibility for benefits would not compel any action or inaction. Denial of benefits is within the power of the petitioners and requires no Court intervention to enforce the plan.

Careful consideration of the language of § 502(a), which provides an exclusive remedy to a participant or beneficiary the right to sue to clarify rights to future benefits under the terms of the Plan, but denies such a cause of action to a fiduciary, supports this interpretation. (*Compare* § 502(a)(1) to § 502(a)(3)). If § 502(a)(3)(B)(ii) is interpreted to encompass a suit by a fiduciary to clarify a claimant's rights to future benefits, it would indirectly permit the fiduciary to accomplish that which it was denied a direct right to do in § 502(a)(1)(B).

Furthermore, as a result of the interaction with § 502(e)(1), state courts would have concurrent jurisdiction over a beneficiary's claim under § 502(a)(1)(B) concerning future benefits while jurisdiction over an action by a fiduciary under § 502(a)(3) would be exclusively federal. *See Transamerica*, 811 F.2d at 1252–53. It is highly unlikely that Congress intended to create such a jurisdictional difference of the identical legal issue based only upon which party filed the action.

The commonly understood meaning of the term "enforce" combined with the illogical results which would accrue from petitioners' interpretation leads inescapably to the conclusion that petitioners' claim does not properly fall within the terms of § 502(a)(3)(B)(ii).

### B. Declaratory Judgment Act

■ While it is apparent that jurisdiction is not conferred directly by ERISA, there is also no question that this Court does have jurisdiction over petitioners' claim pursuant to the Declaratory Judgment Act. The Court in *Transamerica* had little difficulty in reaching this conclusion. Similarly, the *Gulf Life* decision implies that it also could have exercised subject matter jurisdiction pursuant to the Declaratory Judgment Act, 809 F.2d at 523 ("but for the Declaratory Judgment Act, the only way this action would have arisen is a suit by Arnold to collect severance pay he claims is due...."). It was unnecessary for the *Gulf Life* court to consider its jurisdiction under the Declaratory Judgment Act because the issue before it was the availability of the broad venue and service of process provisions contained in ERISA. *Id.* at 1525.

The respondents' simplistic approach to a determination of jurisdiction under the Declaratory Judgment Act—since jurisdiction does not apply directly under ERISA it cannot lie under the Declaratory Judgment Act—does not withstand scrutiny. A proper determination concerning jurisdiction under the Declaratory Judgment Act depends upon the nature of the coercive action threatened by the respondents. "When a declaratory judgment plaintiff asserts a claim that is in the nature of a defense to a threatened or pending coercive action, the character of the threatened or pending coercive action determines whether federal question jurisdiction exists over the declaratory judgment action." *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 253 (7th Cir.1981). The threatened coercive action in this case is a claim for benefits under ERISA, § 502(a)(1)(B), which is, of course, a federal claim. Under this analysis jurisdiction is appropriate under the Declaratory Judgment Act.

Respondents' position on the Declaratory Judgment Act is also contradicted by the Supreme Court's analysis in *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). In *Franchise Tax Board* the Court concluded that the plaintiff had no direct cause under the jurisdictional section of ERISA. *Id.* at 25, 103 S.Ct. at 2854–55. Nevertheless, the Court engaged in extensive analysis concerning whether jurisdiction was available under the Declaratory Judgment Act. *Id.* at 19, 103 S.Ct. at 2851. The Court ultimately concluded that the defendant's right to seek an injunction under § 502(a)(3) was insufficient to confer jurisdiction over a declaratory judgment action by the potential defendant in such a suit. This analysis would have been entirely unnecessary if the Supreme Court adopted respondents' reasoning because the absence of a direct ERISA claim would have precluded independent consideration of the declaratory judgment claim.

Unlike the facts in *Franchise Tax Board*, however, this case presents an entirely appropriate situation for the use of the Declaratory Judgment Act. Petitioners in this action are faced with numerous claims, all based upon a common fact situation, requiring petitioners to determine the rights of beneficiaries to immediate payment under the terms of the Plan. In addition, the Plan faces the obligation to pay all the attorneys' fees of the claimants. Accordingly, ERISA provides the respondents with a direct immediate coercive action to demand payment and, consequently, provides an appropriate situation for declaratory relief to efficiently and expeditiously resolve the dispute. *See* 10A C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure*, § 2751, at 569–71 (2d Ed.1983).

### C. Abstention

■ The Court finds no basis to abstain from resolving the disputes between the parties. Respondents' reliance upon *Transamerica* and *American Auto. Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir.1939), is misplaced. Both cases involved situations where the federal court abstained in deference to an existing state court action. In this case both pending actions are in federal court, respondents having filed their action second and requested an immediate stay.

The sole basis for abstention suggested by the respondents is that they prefer their choice of venue in the federal court in Georgia. However, the facts do not suggest that the Wisconsin venue is significantly less convenient for the respondents than is the Georgia venue. There are no facts in the record to suggest that the Middle District of Georgia is a more appropriate or convenient forum in which to litigate this matter than the Western District of Wisconsin. Both jurisdictions contain a substantial number of potential class members as well as a plant which was sold in the asset sale. There are no facts in the record to suggest that this case is an appropriate one for the Court to exercise its discretion to abstain.

### ORDER

IT IS ORDERED that respondents' motion to dismiss for lack of subject matter jurisdiction is DENIED.

IT IS FURTHER ORDERED that respondents' request for abstention by this Court is also DENIED.