UNITED STATES of America, Plaintiff,

v.

BLUE SKIES PROJECTS, INC., d/b/a Flying Window Tinters, a Florida Corporation, Seminole Solar Systems, Inc., a Florida Corporation, Solar Graphics, Inc., a Florida Corporation, 3801, Inc., d/b/a Window Kote, a Florida Corporation, & Shakespearin, Inc., a Florida Corporation, Defendants.

Nos. 90-0253-CIV-ORL-18, 90-0254-CIV-ORL-18, 90-0429-CIV-ORL-18, 90-0434-CIV-ORL-18 and 90-0435-CIV-ORL-18.

United States District Court,
M.D. Florida,
Orlando Division.

Aug. 13, 1991.

**958**

Douglas Thoresen, Tampa, Fla., Ralph Hopkins, Orlando, Fla., Surell Brady, Karen Stewart, Margot De Ferranti, U.S. Justice Dept., Federal Programs Branch, Civil Div., Eileen T. Leahy, National Highway Traffic Safety Admin., Washington, D.C., for plaintiff.

Sylvia Hardaway Walbolt, Malcolm V. McKay, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., Joe L. Sharit, Jr., Lance Holden, Sharit, Bunn, Chilton & Holden, Winter Haven, Fla., for defendants.

### ORDER

G. KENDALL SHARP, District Judge.

This lawsuit arises under section 1397(a)(2)(A) of the National Traffic and Motor Vehicle Safety Act (Safety Act), 15 U.S.C. §§ 1381–1431 (1988), and was tried without a jury. The issue is whether the defendant businesses violated the Safety Act by selling and installing plastic tint on motor vehicle windows that reduced the light transmittance below seventy percent. The court concludes that the businesses did not violate the Safety Act. In accordance with Federal Rule of Civil Procedure 52(a), the court enters this order.

### I. Findings of Fact

In early 1990, the government brought separate actions against the five defendant businesses because they were engaged in the sale and installation of tinted plastic film. The cases were later consolidated. The government contends that the businesses have violated Federal Motor Vehicle Safety Standard (FMVSS) 205 by their continued installation of window tint that reduced visible light transmittance below the required seventy percent minimum.

The government maintains that the businesses knowingly rendered inoperative the safety glazing materials—the glass and plastic materials from which motor vehicle windows are made—by voluntarily and intentionally applying tint to the windows and, thereby, reducing the light transmittance below the seventy percent limit. As such, the businesses have degraded the safety feature of the windows. Thus, the government argues that any alteration of motor vehicle windows below the seventy percent light transmittance requirement renders the windows inoperative. The government admits, however, that under the Safety Act an individual may apply window tint to his own automobile and not violate the Act, even though the same action by the businesses would be unlawful.

Further, the government argues that the businesses cannot challenge the merits of the seventy percent light transmittance standard because the standard was adopted pursuant to section 1392(h) of the Safety Act and it meets the need for vehicle safety. The government also contends that the only manner in which the businesses may challenge the merits of FMVSS 205 is by seeking judicial review from the circuit court of appeals. Owing to the alleged violations, the government seeks to enjoin the businesses from selling and installing the tint. The government also seeks the maximum civil penalty under the Safety Act of $800,000.00 from each business.

The businesses argue that FMVSS 205 is unenforceable against them because it was not enacted in accordance with the Safety Act. The businesses claim the Act required the Secretary of Transportation to issue both initial standards and new and revised standards, but that the Secretary failed to issue the new and revised standards.

In addition, the businesses maintain that section 1397(a)(2)(A) does not apply to them. The businesses contend that they are not "dealer[s]" or "motor vehicle repair business[es]" as defined by the Safety Act.

The businesses also maintain that the installation of window tint does not fall within the meaning of "motor vehicle equipment" as defined by the Act.

The businesses further contend they did not "knowingly render inoperative" motor vehicle windows by installing the tint, because they were without actual knowledge of any federal violations. They maintain that the letters sent to them by the National Highway Traffic Safety Administration (NHTSA) regarding the installation of window tint only informed them that they may be in violation of the Act. According to the businesses, they became aware they were in actual violation as a result of this lawsuit. Before this suit was filed, the businesses had been operating in full compliance with Florida law. Under state law, the businesses were permitted to apply tint on the side windows of automobiles that allowed at least thirty-five percent light transmittance and on the rear windows of automobiles that allowed twenty percent light transmittance. Over the years, the businesses have applied tint to numerous automobiles, including those driven by law enforcement personnel.

Finally, the businesses argue that the installation of window tint that results in light transmittance of less than seventy percent does not render a window inoperative. Although the government asserts that FMVSS 205 is a safety standard, the businesses offered expert testimony to show the standard was originally enacted as a design standard. According to the testimony, the seventy percent value was adopted in the 1930s as a design standard for safety glazing. Later, it was determined that reducing the amount of light transmittance lessened the temperature inside an automobile, thereby aiding air conditioning systems. Thus, the seventy percent standard was adopted for reasons other than safety. The testimony also showed that not only is there virtually no impairment to visibility, the application of tint which allows thirty-five percent light transmittance actually enhances a driver's visibility by reducing glare. Moreover, such tint does not hamper the visibility of an individual who has to look into a vehicle.

## II. Conclusions of Law

### A. Jurisdiction

This court has jurisdiction under section 1399(a) to restrain violations of the Safety Act. The government maintains, however, that this court lacks jurisdiction to hear a challenge to FMVSS 205. The government asserts that the businesses are challenging the validity of FMVSS 205 and points to section 1394(a)(1), which requires a court of appeals to review orders establishing such standards. Section 1394(a)(1) provides that any person who will be adversely affected by an order may challenge its validity by petitioning a court of appeals before the sixtieth day after the order was issued. If the businesses had initiated this action to challenge the validity of FMVSS 205, this court would lack jurisdiction and their recourse would be with the court of appeals. Yet, the businesses have not initiated this action. The businesses have raised the issue of the standard's validity to defend against the government's action. The businesses are not challenging the seventy percent light transmittance requirement; they are asserting that FMVSS 205 was improperly enacted. The fact that the government initiated this action allows the businesses to question the validity of the safety standard and grants this court jurisdiction.

This court's conclusion regarding jurisdiction is supported by the Sixth Circuit Court of Appeals. In a case involving passive restraint devices, the Sixth Circuit noted that once a safety standard becomes effective, "the validity of that standard is capable of being placed in issue in litigation in any of a number of ways." *Chrysler Corp. v. Department of Transp.*, 472 F.2d 659, 670 (6th Cir.1972). Using the example of imposing fines under 15 U.S.C. § 1398 for failure to conform to required safety standards, the court noted that "[a]n obvious defense in such a prosecution would be the claimed invalidity of the standard and it seems clear that a previous judicial review limited to an approval of the procedural aspects of the adoption of the standard would not bar the defense." *Id.* In addi-

tion, the court stated that in an action brought under 15 U.S.C. § 1399, a defendant may raise standard invalidity as a defense by asserting that the standard "is not practicable, does not meet the need for motor vehicle safety, or is not stated in objective terms." *Id.* at n. 13.

### B. The Safety Act

The government brought this action under section 1397(a)(2)(A) of the Safety Act. For the government to recover civil penalties and to obtain an injunction under the Act, the businesses must have "knowingly rendered inoperative" the motor vehicle windows.

#### 1. Failure to Issue New and Revised Safety Standards.

■ Under the Safety Act, the Secretary of Transportation is required to establish motor vehicle safety standards. 15 U.S.C. § 1392(a). Each federal standard "shall be practicable, shall meet the need for motor vehicle safety, and shall be stated in objective terms." *Id.* In the enactment of the Safety Act, however, section 1392(h) ordered the Secretary not only to issue initial safety standards but also to revise the initial standards:

> The Secretary *shall issue initial* Federal motor vehicle safety standards based upon existing safety standards on or before January 31, 1967. On or before January 31, 1968, the Secretary *shall issue new and revised* Federal motor vehicle safety standards under this subchapter.

*Id.* § 1392(h) (emphasis added).

The statute clearly states that the Secretary must issue initial standards and new and revised standards. Moreover, as stated in the legislative history of the Act, Congress identified the initial standards as interim standards and intended that the Secretary enact new and revised standards. Congress wanted the Secretary to consider new research in forming the standards. Congress required the Secretary to issue initial standards quickly, to revise the standards on or before January 31, 1968, and to "thereafter at least once every 2 years, as

Federal safety research and development matures, ... issue new and revised standards." S.Rep. No. 1301, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 2709, 2713. Congress concern regarding research and development is further emphasized by section 1392(f), which enumerates the factors the Secretary is to consider in establishing the safety standards.

The businesses' expert witness testified that the seventy percent light transmittance requirement was the initial standard and that the Secretary never issued new and revised standards after it established the seventy percent standard. Thus, the businesses contend that FMVSS 205 was not enacted in accordance with the Safety Act and is therefore unenforceable against them. Furthermore, the testimony provided that the initial standard was not enacted as a safety standard but as a design standard, even though the Act requires federal motor vehicle standards to emphasize safety. According to the testimony, the seventy percent light transmittance requirement was originally adopted as a design standard for safety glazing. Later, it was found that adding tint to windows improved the efficiency of air conditioning systems in motor vehicles. At trial, the government provided no evidence to the contrary. Because the Safety Act required the Secretary to issue new and revised safety standards and the government provided no evidence to contradict the testimony that the Secretary did not establish new and revised safety standards, FMVSS 205 is unenforceable against the window tinting businesses.

#### 2. Failure to Knowingly Render Inoperative.

The Safety Act provides that "[n]o manufacturer, distributor, dealer, or motor vehicle repair business *shall knowingly render inoperative,* in whole or part, any device or element of design installed on or in a motor vehicle or item of motor vehicle equipment in compliance with an applicable Federal motor vehicle safety standard...." 15 U.S.C. § 1397(a)(2)(A) (emphasis added).

Accordingly, for the businesses to be liable, the government needed to prove that the businesses fall within the definition of "dealer" or "motor vehicle repair business"; that window tint falls within the definition of "motor vehicle equipment"; and that the businesses "knowingly rendered inoperative" motor vehicle windows through the application of window tint.

■ The Safety Act defines "dealer," "motor vehicle repair business," and "motor vehicle equipment" as follows:

"Dealer" means any person who is engaged in the sale and distribution of new motor vehicles or motor vehicle equipment primarily to purchasers who in good faith purchase any such vehicle or equipment for purposes other than resale.

*Id.* § 1391(7).

"Motor vehicle repair business" means any person who holds himself out to the public as in the business of repairing motor vehicles or motor vehicle equipment for compensation.

*Id.* § 1397(a)(2)(A).

"Motor vehicle equipment" means any system, part, or component of a motor vehicle as originally manufactured or any similar part or component manufactured or sold for replacement or improvement of such system, part, or component or as any accessory, or addition to the motor vehicle, and any device, article, or apparel not a system, part, or component of a motor vehicle (other than medicines, or eyeglasses prescribed by a physician or other duly licensed practitioner), which is manufactured, sold, delivered, offered, or intended for use exclusively to safeguard motor vehicles, drivers, passengers, and other highway users from risk of accident, injury, or death.

*Id.* § 1391(4).

The businesses in this suit are engaged in the sale and installation of window tint. Because the businesses are not engaged in the sale and distribution of motor vehicles, they can only be "dealers" if they are engaged in the sale and distribution of new "motor vehicle equipment." The government, however, neither showed that window tint falls within the definition of "motor vehicle equipment," nor proved that the businesses are "motor vehicle repair business[es]." The Safety Act does not clarify the meaning of "motor vehicle repair business" other than acknowledging that such a business repairs motor vehicles or motor vehicle equipment. Consequently, the plain meaning of the term "repair business" will prevail, "absent a clearly expressed legislative intent to the contrary...." *Gulf Life Ins. Co. v. Arnold,* 809 F.2d 1520, 1522 (11th Cir.1987). The plain meaning of the word "repair" is to restore to sound condition something that has been damaged or broken. Because the businesses install window tint, which has not been proven to be motor vehicle equipment, they are not in the business of restoring or replacing motor vehicle equipment.

■ Even if the window tint businesses were "dealers" or "motor vehicle repair businesses" and window tint was "motor vehicle equipment" within the meaning of the Safety Act, the businesses did not "knowingly render inoperative" motor vehicle windows through the application of window tint. The government rests its case on the businesses' admissions that they install window tint that reduces light transmittance below the seventy percent standard. Further, the government cites *United States v. Haney Chevrolet, Inc.,* 371 F.Supp. 381, 384 (M.D.Fla.1974), which defines "knowingly" as "intentionally and voluntarily." In *Haney,* the court focused on the removal of an emission control device. The Clean Air Act prohibits a dealer from knowingly removing or rendering inoperative certain emission control devices. *Id.* The defendant, however, admitted to the removal of the piece and stipulated to the fact that such removal rendered the emission control system inoperative. *Id.* at 383. Thus, the defendant acted voluntarily, intentionally, and with knowledge that the emission control system would be rendered inoperative. The question before the court was whether the removal was intended to be permanent or temporary. The court concluded that because evidence

showed that the defendant knowingly rendered inoperative the system, the intended length of time for the removal was irrelevant once the defendant allowed the vehicle out of his custody and control. *Id.* at 384.

In contrast, the businesses in the case at hand acted in compliance with Florida law and without knowledge that their actions violated federal law because the law was unclear regarding their conduct. The letters that were sent to the businesses informed them that NHTSA was conducting an investigation to determine whether applying tint to glazing materials violated any provisions of the Safety Act. The letters stated that the businesses *may be* in violation of the Act and directed the businesses to produce documents to aid the investigation. As such, the businesses did not have actual knowledge that they were in violation of FMVSS 205. Although the businesses intentionally and voluntarily installed window tint, the businesses did not knowingly violate federal law.

Although the Safety Act does not define the term "rendered inoperative," legislative history provides some indication of its meaning:

> Regarding the Secretary's authority to prescribe regulations defining the term "render inoperative," the conferees intend that these regulations should make it clear that the permanent removal, disconnection, or degradation of the safety performance of any such device or element of design is prohibited.

H.R.Rep. No. 93–1452, 93 Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 6084, 6102. The government asserts that the application of window tint degrades the safety performance of the glazing materials on motor vehicle windows. The government did not meet its burden of proof on this issue because it did not provide evidence that window tinting in and of itself lessens the safety performance of motor vehicle windows. Further, the businesses provided evidence through expert testimony that certain window tint does not inhibit visibility.

### III.  Conclusion

FMVSS 205 is unenforceable against the window tinting businesses. The Safety Act required the Secretary to issue new and revised safety standards. The government failed to meet its burden of proof; it did not show that FMVSS 205 was enacted in accordance with the Safety Act, whereas the businesses provided evidence that FMVSS 205 is the initial standard and not the required revised standard. In addition, the government did not show that the standard's emphasis was on safety rather than on design.

The government asserted that the businesses are either "dealer[s]" or "motor vehicle repair business[es]" and that window tint is "motor vehicle equipment" as defined by the Safety Act. The government, however, did not prove that the businesses and window tint fall within these classifications. Furthermore, even if the government had met its burden of proof regarding these classifications, the government did not prove that the application of window tint renders motor vehicle windows inoperative. Accordingly, the businesses do not fall within the provisions of the Safety Act, and this court rules in their favor.

It is SO ORDERED.