[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16443
_____

D.C. Docket No. 1:15-cv-03505-CC


WESTROCK RKT COMPANY,

Plaintiff - Appellant,

versus

PACE INDUSTRY UNION- MANAGEMENT PENSION FUND,
BOARD OF TRUSTEES OF THE PACE INDUSTRY UNION-
MANAGMENT PENSION FUND,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 16, 2017)

Before WILSON and ANDERSON, Circuit Judges, and ROTHSTEIN,[*] District Judge.

WILSON, Circuit Judge:

WestRock, an employer contributing to the Pace Industry Union-Management Pension Fund (Fund), is challenging an action taken by the Fund's Board of Trustees (Board). WestRock alleges it has a cause of action to challenge the Board's action under two sections of the Employee Retirement Income Security Act (ERISA). The district court ruled that WestRock does not have a valid cause of action. We affirm that ruling.

## I.    BACKGROUND

The Fund is a multiemployer pension plan, *see* 29 U.S.C. § 1002(37) (defining multiemployer plan), administered by the Board. Half of the Board's members are appointed by participating employers, and the other half are appointed by the sponsoring labor union. *See* 29 U.S.C. § 186(c)(5)(B) (stating that employers must be "equally represented in the administration" of a pension fund). The Board is the Fund's sponsor, meaning it is tasked with administering the Fund. *See* 29 U.S.C. § 1002(16)(B) (defining plan sponsor). WestRock is an employer that has been a long-time contributor to the Fund. The Fund is in

---

[*] Honorable Barbara Jacobs Rothstein, United States District Judge for the District of Columbia, sitting by designation.

"critical status,"[1] which means it is in dire financial condition. Because of its "critical status," special funding rules required the Board to adopt a rehabilitation plan for the Fund. A rehabilitation plan consists of actions, such as reductions in plan expenditures, reductions in future benefit accruals, and increases in contribution rates, designed to improve the Fund's financial outlook. *See* 29 U.S.C. § 1085(e)(3)(A).

The Board adopted a rehabilitation plan in 2010. Two years later, the Board amended the Fund's rehabilitation plan (Amendment) to include a provision requiring an employer that withdraws from the Fund to pay a portion of the Fund's accumulated funding deficiency.[2] WestRock brought a declaratory judgment action against the Fund, seeking a declaration that the Amendment violates ERISA. WestRock argued it could bring the cause of action under 29 U.S.C. §§ 1132(a)(10) or 1451(a). The Fund argued that the Amendment was valid and that those two sections of ERISA do not provide WestRock with a cause of action for declaratory relief. The district court agreed with the Fund that ERISA provides no cause of action and granted the Fund's motion to dismiss the complaint.

---

[1] As defined by 29 U.S.C. § 1085(b)(2).

[2] Under 29 U.S.C. § 1084(a), a fund's accumulated funding deficiency is the amount by which the accumulated charges to the plan's "funding standard account" exceed the accumulated credits to that account at the end of a plan year.

## II.    STANDARD OF REVIEW

We review questions of statutory interpretation and the district court's dismissal of a complaint pursuant to Rule 12(b)(6) de novo.  *See McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005).

## III.    DISCUSSION

This case is one of first impression and turns on statutory interpretation. ERISA "sets forth those parties who may bring civil actions under ERISA and specifies the types of actions each of those parties may pursue." *Gulf Life Ins. v. Arnold*, 809 F.2d 1520, 1524 (11th Cir. 1987).  Thus, "civil actions under ERISA are limited only to those parties and actions Congress specifically enumerated." *Id.*  WestRock believes that it has a valid cause of action under 29 U.S.C. §§ 1132(a)(10) or 1451(a).  With respect to the former section, WestRock argues that § 1132(a)(10) gives it a broad cause of action to raise procedural and substantive challenges to the Board's action when adopting or updating the rehabilitation plan, while the Board argues that § 1132(a)(10) is a narrow cause of action that only permits a suit when the Board has not followed specific statutorily required procedures.  With respect to the latter section, WestRock asserts that § 1451(a), which allows employers to sue over any act under Subtitle E, provides a

4

cause of action because the Amendment, according to WestRock, was an act under Subtitle E.  The Board disagrees.  We begin with § 1132.

## A. 29 U.S.C. § 1132(a)(10)

Under the original § 1132—titled "civil enforcement"—there was no cause of action for an employer.  *See* Pub. L. No. 93–406, 88 Stat. 829 (1974).  Section 1132 authorized various causes of action primarily for participants in or beneficiaries of a pension plan.  For much of ERISA's history, § 1132(a) did "not authorize contributing employers to bring any kind of civil suit at all."  *See Dime Coal Co., Inc. v. Combs*, 796 F.2d 394, 397 (11th Cir. 1986).  Congress limited employers' rights because ERISA was enacted to protect employees' retirement income.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S. Ct. 2488, 2495 (2004) (Thomas, J.) ("Congress enacted ERISA to protect the interests of participants in employee benefit plans and their beneficiaries . . . ." (internal quotation marks omitted)).

However, in 2006, Congress passed the Pension Protection Act (PPA), which amended § 1132 and provided employers a cause of action.  Pub. L. No. 109–280, 120 Stat. 780 (2006).  The PPA amended ERISA to create special funding rules for funds that were at risk of not being able to meet their distribution commitments.  *See* 29 U.S.C. § 1085 (laying out rules for plans that are in "endangered" or "critical" status).  One of those rules was that a plan in "critical

5

status" had to adopt a rehabilitation plan, which forces the plan sponsor, employers, and employees to take action to improve the financial outlook of the fund.  29 U.S.C. § 1085(e).  As part of the PPA, Congress amended § 1132 to include a cause of action for employers in certain scenarios related to these special funding rules—that amendment created § 1132(a)(10).

This brings us to the first issue on appeal—whether WestRock has a cause of action under Subsection B of § 1132(a)(10) to challenge the Amendment to the rehabilitation plan.  Subsection B states that a civil action may be brought by an employer:

> [I]f the plan sponsor—
>
> . . . .
>
> **(B)** fails to update or comply with the terms of the funding improvement or rehabilitation plan **in accordance with the requirements of [Section 1085]** . . .

29 U.S.C. § 1132(a)(10) (emphasis added).[3]  The role the above emphasized phrase—"in accordance with the requirements of [§ 1085]"—plays in Subsection B is at the heart of this first issue.  The emphasized phrase refers to 29 U.S.C. § 1085.  As mentioned earlier, § 1085 lays out the rules for plans in critical or endangered status.  It is a massive section detailing, among other things, how to

---

[3] WestRock has no cause of action under Subsection A.  The provision at issue in this case is an amendment to a rehabilitation plan, and Subsection A is relevant only when no rehabilitation plan has been adopted.

6

determine if the fund is in critical status or endangered status (§ 1085(b)); the process for adopting and updating a funding improvement plan for funds in endangered status (§ 1085(c)); and the process for adopting and updating a rehabilitation plan for funds in critical status (§ 1085(e)).

WestRock places a lot of importance on the phrase "in accordance." WestRock, in light of the "in accordance" language, contends that § 1132(a)(10) "provides employers with a cause of action to compel critical status [multiemployer pension] plan sponsors to follow the correct procedure for adopting rehabilitation plan contribution requirements under [§ 1085], and to ensure that any updates are in accordance with the requirements of [§ 1085]." Under this view, an employer can challenge both the substance and procedure of an amendment under Subsection B. WestRock's challenge "is based on both the invalid substance of the Amendment and the faulty procedure through which the Amendment attempts to impose additional contribution requirements."

The Board embraces a narrower interpretation of § 1132(a)(10). Under the Board's interpretation, Subsection B only permits an employer to bring an action when the Board fails to update in accordance with the procedural requirements of § 1085—specifically, the requirements that the rehabilitation plan must be updated annually and that the update must be filed with the plan's annual report. However,

the "in accordance" language, the Board asserts, does not give an employer the right to challenge the substance of a provision in a rehabilitation plan.

Ultimately, we do not need to resolve this dispute over what § 1132 authorizes because WestRock failed to allege properly that the Amendment violates § 1085 in any manner, procedurally or in substance.

WestRock claims that the Amendment violates § 1085 because (1) "contribution rate schedules must be provided to the bargaining parties" and (2) "critical status [multiemployer plans] with valid rehabilitation plans may not unilaterally impose on employers contribution requirements necessary to avoid an [accumulated funding deficiency]." However, the Amendment does not violate § 1085. The procedure WestRock cites to for contribution rate schedules is inapplicable here; that procedure arises out of § 1085(e)(3)(A)(i), but only § 1085(e)(3)(A)(ii) is implicated here. Further, there is no explicit restriction saying the Board cannot charge withdrawing employers for their share of the accumulated funding deficiency.

First, WestRock ignores the procedural difference between § 1085(e)(3)(A)(i) and (ii). Subsections (i) and (ii) lay out two alternative versions of rehabilitation plans. *See* 29 U.S.C. § 1085(e)(3)(A) (separating the two subsections with an "or"). Section 1085(e)(3)(A)(i) states a rehabilitation plan "may include reductions in plan expenditures (including plan mergers and

8

consolidations), reductions in future benefit accruals or increases in contributions, **if agreed to by the bargaining parties,** or any combination of such actions." (emphasis added).  WestRock believes that the Amendment violated this section by requiring "additional contributions without subjecting those increases to negotiation between the bargaining parties."  However, the Amendment was adopted pursuant to the plan sponsor's authority to adopt "reasonable measures" as part of a rehabilitation plan under § 1085(e)(3)(A)(ii).  *See* 29 U.S.C. § 1085(e)(3)(A)(ii).  The "if agreed to by the bargaining parties" language is not included in (ii).  *See Shotz v. City of Plantation*, 344 F.3d 1161, 1168 (11th Cir. 2003) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)).  Section 1085(e)(3)(A)(ii) does place restrictions on a plan sponsors' ability to adopt reasonable measures.[4]  However, WestRock does not allege that the Board failed to meet any of these requirements. And WestRock does not cite to anything else in the statute that suggests an employer has a role to play when the plan sponsor enacts reasonable measures under § 1085(e)(3)(A)(ii).  *See Useden v. Acker*, 947 F.2d 1563, 1582 (11th Cir.

---

[4] *See* 29 U.S.C. § 1085(e)(3)(A) ("[I]f clause (ii) applies, [the plan] shall set forth the alternatives considered, explain why the plan is not reasonably expected to emerge from critical status by the end of the rehabilitation period, and specify when, if ever, the plan is expected to emerge from critical status in accordance with the rehabilitation plan.")

9

1991) ("We cannot infer that Congress's silence is accidental in an area where Congress has already said so much out loud.").

In regard to WestRock's second argument, WestRock has not cited to any portion of ERISA that explicitly states that a plan sponsor cannot put in place a system for charging withdrawing employers for their share of the accumulated funding deficiency. WestRock argues that the Amendment violates § 1082. This argument is not persuasive. First § 1082 is not § 1085. Second, the Amendment does not violate § 1082. Normally, when a fund is facing an accumulated funding deficiency, employers face an automatic payment to compensate for the deficiency. *See* 29 U.S.C. § 1082. Section 1082 relieves employers from that payment when a rehabilitation plan is adopted. 29 U.S.C. § 1082(b)(3). WestRock reads § 1082 as broadly prohibiting any sort of charge related to an accumulated funding deficiency for funds in "critical status." We believe that is an incorrect reading of § 1082. Section 1082 relieves an employer from an automatic payment; it does not go so far as to prohibit a charge based on accumulated funding deficiencies in all scenarios. *See CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1226 (11th Cir. 2001) ("Where Congress knows how to say something but chooses not to, its silence is controlling." (internal quotation marks omitted)). We refuse to read into § 1082 such a broad preemption that Congress did not explicitly create. *See Useden*, 947 F.2d at 1581 ("ERISA is a comprehensive and reticulated statute

10

bearing the marks of circumspect drafters; courts should proceed with commensurate circumspection . . . ." (internal quotation marks omitted)).

WestRock has not properly alleged that the Amendment violates § 1085 in a manner sufficient to bring a cause of action under Subsection B of § 1132(a)(10).

### B. 29 U.S.C. § 1451(a)

Next we turn to WestRock's argument that it has a cause of action under 29 U.S.C. § 1451(a).  Section 1451(a) authorizes an employer to bring an action when it "is adversely affected by the act or omission of any party under [Subtitle E] . . . ."  29 U.S.C. § 1451(a)(1).  Subtitle E is titled "Special Provisions for Multiemployer Plans" and has six parts, one of which governs employer withdrawals.[5]  The subsection governing employer withdrawals lays out how to calculate "withdrawal liability"—the amount a withdrawing employer is charged for its share of the unfunded vested benefits.  *See* 29 U.S.C. §§ 1381–1405 (governing the calculations for "withdrawal liability").  Unfunded vested benefits are different than an accumulated funding deficiency, which is what the Amendment deals with.[6]

---

[5] The other five parts govern merger or transfer of plan assets or liabilities, insolvent plans, financial assistance, benefits after termination, and enforcement.

[6] "[T]he **accumulated funding deficiency** of a multiemployer plan for any plan year is the amount, determined as of the end of the plan year, equal to the excess (if any) of the total charges to the funding standard account of the plan for all plan years (beginning with the first plan year for which this part applies to the plan) over the total credits to such account for such years."  29 U.S.C.§ 1084(a) (emphasis added). "[T]he term **'unfunded vested benefits'** means

11

WestRock claims that, because Subtitle E governs "withdrawal liability," it governs any and all liability that a plan may impose on a withdrawing employer. Therefore, because the Amendment imposes an additional liability on WestRock if it withdraws, § 1451(a) provides it with a cause of action to challenge the Amendment. The Board argues that the Amendment was not an act under Subtitle E and there is nothing in ERISA supporting WestRock's contention otherwise.

The text of §1451(a) does not support WestRock's reading. The text authorizes an employer to bring an action when it "is adversely affected by the act or omission of any party under [Subtitle E] . . . ." 29 U.S.C. § 1451(a)(1). In other words, the employer must be challenging an act or omission under Subtitle E in order to maintain a cause of action under §1451(a). Here, the Board adopted the Amendment pursuant to its authority under § 1085(e)(3)(A)(ii), which is under Subtitle B, not Subtitle E. WestRock counters that "Subtitle E governs any and all liability that may be imposed on employers upon withdrawal," and, thus, the Amendment is an act arising under Subtitle E because it "attempts to impose additional liability upon an employer's withdrawal."

However, WestRock's own arguments undercut its contention that the Amendment is an act under Subtitle E. WestRock's argument is that the

---

with respect to a plan, an amount equal to—(A) the value of nonforfeitable benefits under the plan, less (B) the value of the assets of the plan." 29 U.S.C. § 1393(c) (emphasis added).

Amendment violates Subtitle E because "the liability established by the Amendment is not authorized by [29 U.S.C. §§ 1381–1405]."[7]  Its argument distilled is that the Amendment is an act under Subtitle E satisfying § 1451(a), yet we should strike down the Amendment because it is not authorized by Subtitle E.  It is hard to comprehend how something can simultaneously be an act under a subtitle and not an act under a subtitle.

Beyond that seeming contradiction, WestRock is attempting to make an implied preemption argument.  It is asking us to recognize that Congress intended to completely occupy the field regarding payments exacted from withdrawing employers by spelling out how to calculate a withdrawing employer's share of the unfunded vested benefits.  Stated another way, no other charges can be levied against a withdrawing employer because Congress specified how to divvy up a withdrawing employer's share of the unfunded vested benefits.  Our response to WestRock's request is simple—no.  As stated earlier, our approach to interpreting ERISA is measured and restrained.  *See Gulf Life*, 809 F.2d at 1524.  ("[C]ivil actions under ERISA are **limited** only to those parties and actions Congress specifically **enumerated** . . . ." (emphasis added)).  There is nothing in the text that indicates Congress intended for "withdrawal liability" to be the only payments a withdrawing employer would ever face, and because of the comprehensive nature

---

[7] Sections 1381–1405 are the sections in Subtitle E governing "withdrawal liability."

13

of ERISA, we read the absence of such language as intentional. *See Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 97, 101 S. Ct. 1571, 1583–84 (1981) ("The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement."). Recognizing such a broad preemption limiting a plan sponsor's abilities is not explicit in the text, and we refuse to recognize one implicitly. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S. Ct. 242, 247 (1979) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").

## IV.    CONCLUSION

We affirm the district court's ruling. WestRock has not pleaded the requisite injuries to satisfy bringing a cause of action under 29 U.S.C. §§ 1132(a)(10) or 1451(a).

**AFFIRMED.**

14