**W.L. HARRIS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. WC 91–47–B–D.**

United States District Court,
N.D. Mississippi, W.D.

Dec. 4, 1992.

· Preston D. Rideout, Jr., Greenwood, MS, for plaintiff.

Patricia D. Rogers, U.S. Attorney's Office, Oxford, MS, for defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause comes before the court on the defendant's motion to dismiss and on cross-motions for summary judgment. In this action plaintiff W.L. Harris seeks a declaratory judgment that certain conservation easements placed upon his land by the Farmers Home Administration (hereinafter FmHA) are void. After due consideration of the

pleadings and memoranda filed in this cause, the court is prepared to rule.

## FACTS

On August 24, 1987, the Grenada Bank of Mississippi foreclosed on 1,893 acres of land belonging to the plaintiff. To protect its lien on the property, the FmHA successfully bid at the foreclosure sale. The property at that time had an appraised value of $683,000.00 and, subsequent to the government's purchase, the plaintiff's indebtedness to the defendant was credited in that amount. The land thereupon entered the FmHA's inventory on September 1, 1987, and was assigned Advice Number 86216. Thereafter, the United States Fish and Wildlife Service (hereinafter FWS) was requested to render assistance to the FmHA for the purpose of determining if there were wetlands on the property or if some or all of it qualified for wetlands assessment. After the FWS advised the FmHA that 1004.7 acres of the land were properly classified as wetlands, the defendant thereupon designated that portion so identified as "wetlands."

On June 16, 1988, the plaintiff was given notice as a former owner of FmHA inventory property of his lease-back/buy-back rights. In April of the following year, Harris exercised those rights by signing a contract to repurchase the land for $371,700.00, an amount that represented the reduced value of the property with the wetlands easements. A quitclaim deed noting the easements was prepared and signed by the parties on April 28, 1989. Shortly thereafter, Harris discovered that due to the extent of the conservation easements which now restricted his land, he was unable to farm enough of it to provide sufficient revenue to make his annual payments on his debt to the FmHA. He thereupon filed suit seeking (1) a declaratory judgment that the wetlands easements placed upon his land by the FmHA are void and an unlawful cloud on his title; (2) a declaratory judgment that the land declared by the FmHA to be wetlands is not wetlands; and (3) an order directing the FmHA to issue the plaintiff a new deed without the wetlands easements and/or to cease and desist from preventing the plaintiff from farming the amount of land necessary to generate sufficient revenue to make his annual land payments. The defendant has answered the complaint and subsequently filed a motion to dismiss or, in the alternative, for summary judgment. The plaintiff also moves for summary judgment. For the reasons that follow, this court determines that although its motion to dismiss is not well taken, the defendant's motion for summary judgment has merit and the same will be granted in part.

## DISCUSSION

### A. Motion to Dismiss

The defendant moves the court to dismiss the complaint in this cause on the ground that subject matter jurisdiction is lacking insofar as the plaintiff's action should properly be before the United States Court of Claims pursuant to the Tucker Act. The plaintiff's complaint lists 28 U.S.C. § 1331, 28 U.S.C. 2409a, and 5 U.S.C. § 702 as the jurisdictional prerequisites for this action.

### 1. The Tucker Act

The defendant's argument in support of its motion to dismiss, simply stated, is that the plaintiff's claims are essentially contractual in nature. Furthermore, since the value of the relief sought—the difference between the property free of the wetlands easements and that of the property so encumbered—exceeds $10,000, the defendant argues that jurisdiction properly lies with the Court of Claims. Conversely, the plaintiff asserts that his claims are not contract-based and, at any rate, he is not seeking money damages but rather declaratory relief. As such, this court has jurisdiction pursuant to 28 U.S.C. § 1331 since what he seeks is a judicial declaration that the wetlands easements were unlawfully placed on his property by the FmHA and are void under the Agricultural Credit Act of 1987. Alternatively, the plaintiff contends that this court has jurisdiction under the Quiet Title Act, 28 U.S.C. § 2409a.

To sue the United States, Congress must have waived sovereign immunity with respect to the claim being asserted and provided jurisdiction to hear the claim in the court in which the suit is brought. *Bank of*

*Hemet v. United States,* 643 F.2d 661, 664 (9th Cir.1981). Jurisdiction over contract actions against the United States where the amount in controversy exceeds $10,000 must be brought pursuant to the Little Tucker Act in the United States Court of Claims. 28 U.S.C. 1346(a)(2). The Act's jurisdictional provisions may not be avoided by simply framing the complaint as a request for declaratory relief. *Professional Managers Association v. United States,* 761 F.2d 740 (D.C.Cir.1985).[1] Title 28 U.S.C. § 1331 is not sufficient to confer jurisdiction over a contract claim seeking money damages exceeding $10,000 against the United States because § 1331 does not waive the sovereign immunity of the United States. *North Side Lumber Co. v. Block,* 753 F.2d 1482, 1484 (9th Cir.), *cert. denied,* 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985).

■ In this case, the court concludes jurisdiction is proper. The plaintiff does not allege that the FmHA has breached its contract with him nor does he question the obligations incident to that contract. Neither is the plaintiff seeking money damages. Rather, Harris challenges the very authority of the FmHA to impose the contractual conditions at issue in this case, wetlands easements, on inventory property that is subject to lease-back/buy-back rights given by congressional enactment. Merely by pointing to the fact that if the plaintiff succeeds he will have gained something of value in excess of $10,000 is not sufficient to raise a jurisdictional question where the plaintiff does not proceed under rights stemming from a contract with the government. Harris questions the actions of the FmHA in light of the Agricultural Credit Act of 1987 and has proceeded under statutory-based rather than contract-based rights, a distinction which another court has found significant in this con-

text. *See Rowe v. United States,* 633 F.2d 799 (9th Cir.1980) (plaintiffs' reliance on federal statute as authority for requiring Secretary of Interior to award lease prevented court from dismissing their otherwise contract-related claims against the United States), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981). In sum, the court concludes that § 1346(a)(2) does not divest this district court of jurisdiction where plaintiff challenges the actions of the government on the basis of federal statutory law and not on the basis of a contract between the parties. The inapplicability of 28 U.S.C. § 1346(a)(2), however, raises another problem.

■ This action arises under federal law and, as such, jurisdiction is proper in federal district court pursuant to 28 U.S.C. § 1331. As stated earlier, however, § 1331 is not a waiver of sovereign immunity. *Beale v. Blount,* 461 F.2d 1133, 1138 (5th Cir.1972). In concluding that this cause is not founded upon a contract with the United States, the limited waiver of the defendant's sovereign immunity included in 28 U.S.C. § 1346(a)(2) does not apply. As the government does not consent to suit, the question remains whether the plaintiff's invocation of either 5 U.S.C. § 702 or 28 U.S.C. § 2409a can provide the proper basis for the waiver of immunity necessary for the maintenance of this action.[2]

**2. Quiet Title Act**

■ The defendant asserts jurisdiction is proper under the Quiet Title Act (QTA), 28 U.S.C. § 2409a. 28 U.S.C. § 1346(f) vests "exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States" in the district court. The QTA is a limited waiver

---

1. Nor does the Tucker Act authorize the district court to grant declaratory or equitable relief against the United States, even though the relief requested is brought in the context of an action under § 702 of the Administrative Procedure Act, if the relief the plaintiff seeks would have the actual effect of money damages. *North Side,* 753 F.2d at 1485.

2. The plaintiff also alleges jurisdiction under 28 U.S.C. §§ 2201 and 2202. Neither the Declara-

tory Judgment Act, 28 U.S.C. § 2201, nor the "Further Relief" statute, 28 U.S.C. § 2202, confer jurisdiction on this court but, rather, provide additional remedies where jurisdiction independently already exists. *Smith v. Lehman,* 533 F.Supp. 1015, 1018 (E.D.N.Y.1982), *cert. denied,* 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1018 (1983); *United States v. Smith,* 393 F.2d 318 (5th Cir.1968).

of the sovereign immunity of the United States where action is brought to quiet title to lands in which the United States "claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a. If the plaintiff's contention that the Agricultural Credit Act of 1987 divests the FmHA of authority to impose conservation easements on land subject to the prior owner's lease-back/buy-back rights is correct, then such easements appearing on the plaintiff's deed constitute an unlawful cloud upon his title. The government's legally cognizable interest in the plaintiff's land prevents his intended use for the property (farming) and the government does not disclaim such an interest. The court agrees that jurisdictionally the QTA is the proper vehicle upon which such claims can proceed before this court. *Knapp v. United States,* 636 F.2d 279 (10th Cir. 1980). The plaintiff's claim (Complaint, para. 8, p. 4) that the conservation easements are an unlawful cloud on his title by virtue of the Agricultural Credit Act of 1987, specifically, 7 U.S.C. § 1985(e)(1)(A)(i), which he alleges renders nugatory Executive Order 11990, is properly before this court under the QTA, the exclusive remedy for resolving this dispute, *Block v. North Dakota,* 461 U.S. 273, 286, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983).[3]

3. To the extent that the plaintiff complains that he has been wronged by adverse agency action, section 702 of the Administrative Procedures Act, 5 U.S.C. § 702, is likewise a waiver of the defendant's sovereign immunity. The plaintiff lists section 10 of the Administrative Procedure Act, 5 U.S.C. § 702, in the jurisdictional section of his complaint. Upon review of his complaint, it is apparent that the alleged administrative wrongdoing primarily stems from the actions of FmHA officials in following administrative regulations promulgated ostensibly to comply with Executive Order 11990. To the extent that plaintiff implies that the APA provides an independent jurisdictional basis for adjudicating the issue of title, such implication must be rejected. *Block v. North Dakota,* 461 U.S. 273, 286 n. 22, 103 S.Ct. 1811, 1819 n. 22., 75 L.Ed.2d 840, 853 n. 22 (1983) (Quiet Title Act is exclusive means to challenge government's title to real property). However, to the extent that plaintiff (1) challenges the FmHA's designation of certain acreage to be wetlands that are not properly so designated under the applicable regulations and/or (2) contends the government has changed the preexisting characteristics of the land through the construction of ditches and levees

In sum, § 1331 provides the jurisdictional base for the plaintiff's claims. 28 U.S.C. 1346(a)(2) does not compel dismissal or transfer of this cause to the Court of Claims since this is not an action founded upon a contract with the United States nor are monetary damages sought. 28 U.S.C. § 1346(f) vests exclusive jurisdiction with this court over the plaintiff's title dispute with the United States (Complaint, para. 8, p. 4) and § 2409a provides the applicable waiver of immunity. Analysis of the plaintiff's remaining claim, that the property is not in fact properly designated as wetlands or, alternatively, that they are currently wetlands only because of agency action, will proceed under the Administrative Procedure Act. To the extent that the government's immunity need separately be waived for such claim, authority for the waiver is found in 5 U.S.C. § 702.[4] The defendant's motion to dismiss will therefore be denied.

## B. Motion for Summary Judgment

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The entry of summary judgment is mandated by this rule, after adequate time

(Complaint, para. 10, p. 5), review of the agency's action will proceed under the APA as to these claims.

4. The plaintiff initially raised an issue of detrimental reliance upon representations of the government that he would be allowed to farm enough land to both participate in the conservation reserve program and make his annual payments after the imposition of the wetlands easements. (Complaint, para. 9, p. 5.) Upon review of his response to the government's motion to dismiss, it appears that he has either abandoned the claim or merged those contentions included therein with his argument that the wetlands easements are prohibited by the Agricultural Credit Act of 1987. The plaintiff has not put in issue what representations were made and by whom. His response is limited to a continuation of his argument that the wetlands easements are unlawful and, therefore, prospective government payments derived from participation in governmental farm programs are permitted by law. Accordingly, the court does not consider nor will it analyze the same apart from or independent of the plaintiff's primary contention that such easements are in fact unlawful.

for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to the case upon which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Before finding that no material fact exists the court must first be satisfied that no reasonable trier of fact could have found for the nonmovant. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**1. FmHA's Authority to Impose Wetlands Easements**

■ Turning to the merits, the plaintiff makes one basic argument in support of his request that this court declare the easements placed on his land by the agency void. Although approaching the issue from several standpoints, his sole contention is that the FmHA has no authority to place wetlands easements on property subject to a buyer's lease-back/buy-back rights. The agency points to Executive Order 11990 as the source of authority for its actions. That order, signed by President Carter in 1977, states in relevant part:

> Each agency ... shall take action to minimize the destruction, loss or degradation of wetlands, and to preserve and enhance the natural and beneficial values of wetlands in carrying out the agency's responsibilities for ... acquiring, managing, and disposing of federal lands ... [.]

> When federally-owned wetlands or portions of wetlands are proposed for lease ... or disposal to non-federal public or private parties, the federal agency shall (a) reference in the conveyance those uses that are restricted under identified federal, state or local wetlands regulations; and (b) attach other appropriate restrictions to the uses of properties by the grantee or purchaser and any successor, except where prohibited by law ... [.]

The FmHA does not itself identify wetlands resources but rather employs the FWS as its technical consultant to survey and inspect inventory property for possible wetlands resources and to recommend appropriate conservation measures. This interagency cooperation has its genesis in a memorandum of understanding entered into by both agencies to further the FmHA's duty to protect wetlands resources pursuant to Executive Order 11990 and the Food Security Act, 7 U.S.C. § 1961, *et seq.*

**2. Prohibited By Law**

The plaintiff in reliance upon the Agricultural Credit Act of 1987 asserts essentially five arguments in support of his position that the FmHA's imposition of easements in this case are, in the words of Executive Order 11990, "prohibited by law." First, the plaintiff argues that the Agricultural Credit Act which gave former owners such as the plaintiff lease-back/buy-back rights is silent as to the conditions placed upon the exercise of those rights. Such silence, it is assumed, lends inferential support for the plaintiff's position. Second, subsection seven (7) of the Act as codified, 7 U.S.C. § 1985, gave the Secretary of Agriculture the right to condition the lease or sale of highly erodible inventory land on the agreement of the lessee/purchaser to accept "specified conservation practices." The deliberate omission of "wetlands" is, according to the plaintiff, evidence that lease-back/buy-back rights are not subordinate to Executive Order 11990.

Third, § 612 of the Agricultural Credit Act of 1987, codified as 7 U.S.C. § 1997, authorizes the Secretary to "purchase" conservation easements from delinquent FmHA borrowers by reducing their indebtedness in an amount equal in value to the easement. Reasoning from this provision, the plaintiff asserts that since Congress intended the Secretary to purchase easements, it is not logical that it intended also to allow the agency to extract such easements by coercion when the purchaser exercises buy-back rights. Fourth, in § 616 of the Act, codified as 7 U.S.C. § 2002, the FmHA is authorized to transfer to any federal or state agency for use for conservation purposes any inventory which "has marginal value for agricultural production" and is "environmentally sensitive." The Secretary must, however, wait until the rights of prior owners have expired. Since Congress made lease-back/buy-back rights expressly superior to the agency's rights to transfer land under § 616 to anoth-

er agency, the plaintiff contends that the logical inference is that purchasers exercising buy-back rights are superior to the FmHA's right per 11990 to impose easements. Fifth and finally, § 1813 of the 1990 Farm Bill (effective November 28, 1990), which amended 7 U.S.C. § 1985 by adding subsection (g), requires the Secretary to establish perpetual wetlands conservation easements on inventory property. In addition to setting forth the exact percentage of former crop land susceptible to the imposition of conservation easements, under the new amendments all easements imposed cannot be so encompassing as to prevent any parcel of land sold or leased to a previous owner from being a "marketable agricultural production unit," 7 U.S.C. § 1985(g)(5)(B). If it is necessary to prevent such an occurrence, the easements will be reduced accordingly.

Before addressing the plaintiff's argument that the agency has no authority to impose wetlands easements upon his land, it is necessary to point out that the real estate in issue in this case was appraised on July 9, 1987 for the FmHA and the market value assessed at $683,000.00. After the plaintiff indicated his desire to purchase the property, the agency reviewed the boundaries of the wetlands areas previously designated after agency acquisition, and a new appraisal was conducted which took into account the conservation easements. In April, 1989, the value of the property with said easements was established at $371,700.00. The quitclaim delivered to the plaintiff after the sale of the property clearly listed the conservation easements and the reduced price for the land reflected their existence. While not addressing this difference in the market value of the

property after the imposition of the easements, what plaintiff is seeking as his remedy in this cause is the removal of these easements from his land rather than a rescission of the sale. That apparent potentially inequitable result aside, the court finds the plaintiff's assertion that the FmHA is without authority to impose wetlands easements on inventory property untenable from a number of standpoints.

The plaintiff asserts that Congress per § 1985(e)(1)(B) provided the FmHA statutory authority for the discretionary imposition of "terms and conditions" upon which previous owners were allowed to repurchase inventory property. 7 U.S.C. § 1985(e)(1)(B) states that "[a]ny purchase or lease under subparagraph (A) shall be on such terms and conditions as are established in regulations promulgated by the Secretary." The "terms and conditions" which are relevant to this issue include: 7 C.F.R. 1955.137 promulgated by the FmHA in 1986, which provides for conservation use restrictions on inventory land,[5] and 7 C.F.R. § 1955.139(a)(3)(V), which specifically addresses the relationship between a prior owner's rights and the FmHA's obligations under Executive Order 11990.[6]

On December 23, 1985, Congress passed the Food Security Act, codified at 7 U.S.C. § 1985. Contrary to the plaintiff's contention, this act first provided lease-back/buy-back rights to former owners of FmHA inventory property, rather than the Agricultural Credit Act of 1987 which amended § 1985. U.S.C. § 1985(e)(1)(A)(i) requires that within 180 days of acquisition the Secretary must "allow the borrower from whom the Secretary acquired real property used to secure

5. In relevant part, § 1955.137(a) states:

(1) Use restrictions. Executive order 11988, "Floodplain Management," and Executive order 11990, "Protection of Wetlands," require the conveyance instrument for inventory property in floodplains or wetlands which is proposed for lease or sale to specify those uses that are restricted under identified Federal, State and local floodplains or wetlands regulations as well as other appropriate restrictions. The restrictions shall be to the uses of the property by the lessee or purchaser and any successors, except prohibited by law, as determined by the FmHA official responsible for the

conveyance. Applicable restrictions will be incorporated into quitclaim deeds ...[.]

6. For FP [farmer program] cases except where FmHA has an affirmative responsibility to place a conservation easement upon a farm property, easements under the authority of this paragraph will not be established unless either the rights of all prior owner(s) have been met or the prior owner(s) consents to the easement. Examples of instances where an affirmative responsibility exists to place an easement on a farm property include wetland and floodplain conservation easements required by § 1955.137 of this subpart ...[.]

any loan made to the borrower under this chapter to purchase or lease such property." 7 U.S.C. § 1985(d) states that:

> With respect to any real property administered under this chapter, the Secretary is authorized to grant or sell easements or rights-of-way for roads, utilities, and other appurtenances not inconsistent with the public interest.

The plaintiff's land bought out of government inventory pursuant to 7 U.S.C. § 1985(e)(1)(A)(i) is "real property administered under this chapter."

The plaintiff cites no constitutional problem arising from the agency's following of Executive Order 11990 and, in fact, acknowledges that the Agricultural Credit Act of 1987 does not affirmatively prohibit such action. There is no argument that the wording of the governing statute is ambiguous or that Executive Order 11990 was not law when promulgated in 1977.[7] Support for the plaintiff's sole contention that a subsequent congressional enactment, the Agricultural Act of 1987, rendered E.O. 11990 void, or in the plaintiff's words "nugatory," is built upon an inference from what 7 U.S.C. § 1985 does not say rather than what it does. The plaintiff has adduced no evidence of legislative intent to support his position, and this court will not assume that E.O. 11990 was in some manner voided sub silentio by later enacted legislation. Rather, it is only reasonable to assume that Congress was aware of the existence of the then ten-year-old Executive Order 11990 when it passed the Agricultural Credit Act. In the 1990 amendments to § 1985, Congress saw fit to lessen the impact of agency compliance with E.O. 11990 on farm property owners exercising their lease-back/buy-back rights.[8] Up until the 1990 amendments, however, Congress had not placed upon the FmHA the affirmative duty to impose wetlands conservation easements upon inventory land. Although, pursuant to § 1985(g)(1), it currently has that obligation subject to certain detailed guidelines, this does not indicate that the agency lacked this authority previous to the amendment.[9] To argue otherwise is to imply that an agency can disregard directives included in Executive Orders unless and until Congress has required the same. E.O. 11990 commands that it be done; 7 U.S.C. § 1985 consents to its being done and the Agricultural Credit Act of 1987 does not forbid it. In sum, this court finds the plaintiff's arguments unpersuasive and will not grant him the declaratory relief sought in this cause.

### 3. Wetlands Designation

 Under the Administrative Procedure Act, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Agency action is entitled to a presumption of regularity, and the burden of proof rests with the party alleging irregularity. *Frisby v. United States Dept. of Housing & Urban Dev.*, 755 F.2d 1052, 1055 (3rd Cir.1985). Agency action will not be set aside on the grounds that it is arbitrary and capricious if such action is rational, based on relevant factors and within its statutory authority. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). While the plaintiff contends in his complaint that "[t]he lands which the government has declared to be wetlands are not wetlands," neither he nor the government has alluded to the point further in their motions before the court. In his

7. Executive Orders when issued by the president pursuant to statutory authority has the force and effect of a statute enacted by Congress. *Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503, 1514 (11th Cir.1985). The statutory authority for E.O. 11990 as therein stated was the National Environmental Policy Act of 1969, as amended, 42 U.S.C. § 4321, *et seq.*

8. There is nothing to indicate that such amendments have retroactive application nor has plaintiff argued that position.

9. At least one court has found that the FmHA lacks authority to convey inventory property acquired from a former owner through foreclosure without the imposition of such conservation easements. *Miles v. Yeutter*, No. 89–1348 (D.Ore. July 3, 1990), *aff'd*, 956 F.2d 275 (9th Cir.), *cert. denied*, ── U.S. ──, 113 S.Ct. 77, 121 L.Ed.2d 42 (1992).

complaint, the plaintiff states that "[r]ice, soybeans, wheat and milo will not grow in wetlands as that term is defined in the applicable laws and regulations." As such crops were grown on this property previously, he contends that "[i]f these lands are now wetlands, it is because the government has changed the preexisting characteristics of the land by constructing ditches and levees." Although inadequately briefed, the issue is properly before the court. The plaintiff may challenge under the APA whether or not the areas designated by the FmHA as "wetlands" are correctly designated in conformance with applicable regulations [10]. Accordingly, the court finds summary judgment inappropriate on this claim and the same will proceed to trial on its merits.

In sum, the court finds that the plaintiff's motion for summary judgment has no merit and the same will be denied. The defendant's motion to dismiss for lack of jurisdiction likewise lacks merit and will also be denied. Finally, the court finds that the defendant's motion for summary judgment has merit and the same will be granted in part and, accordingly, all claims dismissed except plaintiff's request for review of the agency's wetlands determinations. (Complaint, para. 10.)

10. *See* E.O. 11990, § 6(c) and 16 U.S.C. § 3801(a)(16).