## KLLM, INC. EMPLOYEE HEALTH PROTECTION PLAN, Plaintiff,

### v.

## ONTARIO COMMUNITY HOSPITAL.

Civil Action No. 3:96CV387 (L) (N).

United States District Court,
Southern District of Mississippi,
Jackson Division.

Oct. 28, 1996.

Robert P. Thompson, W. Shan Thompson, Copeland, Cook, Taylor & Bush, Jackson, MS, for plaintiff.

John H. Henley, Henley, Lotterhos & Henley, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of defendant Ontario Community Hospital (Ontario), a California corporation, to dismiss under Rule 12(b)(1) and (2) for lack of subject matter and personal jurisdiction. Ontario moves alternatively for a change in venue, presumably pursuant to 28 U.S.C. § 1404(a). Plaintiff KLLM, Inc. Employee Health Plan (the Plan), organized by KLLM, Inc., a Mississippi-based company, opposes the motion, and the court, having considered the memoranda and submissions of the parties, now concludes that the motions should be denied.

The Plan seeks a judicial declaration pursuant to Rule 57 of the Federal Rules of Civil Procedure that because the treatment rendered by Ontario to a Plan beneficiary, Larry Meysenburg,[1] is not a covered expense under the plan due to the plan's pre-existing condition limitation, Ontario is not entitled recover any benefits under the plan. Additionally, the Plan has requested that all costs be assessed against Ontario. Ontario filed this motion to dismiss contesting both subject matter and personal jurisdiction and alternatively moving for a change of venue. Subsequent to filing this motion, Ontario amended its answer to include a counterclaim against the Plan.[2] The counterclaim alleges pendent jurisdiction and claims Ontario is entitled to payment on the basis that the Plan "is and was the health care insurer for said Larry Meysenburg and as such became indebted to [Ontario's predecessor in interest] for the indebtedness of Larry Meysenburg for such treatment."

The following facts give rise to the present dispute. On October 27, 1993, Meysenburg, an employee of KLLM, Inc. who was enrolled in the plan, was admitted to Ontario for treatment of legionnaire's pneumonia. While at Ontario, Meysenburg's condition deteriorated and on November 30, 1993, he was transferred to another hospital. After the Plan denied his claims, Meysenburg employed an attorney who sent letters to the Plan demanding payment of the claims. In response, on September 8, 1995, the Plan sought a declaratory judgment in this court to the effect that under the terms of the plan no benefits were owed and thus Meysenburg was entitled to no relief. Meysenburg responded to neither the Plan's request for admissions, nor its motion for summary judgment. Accordingly, on May 31, 1995, having deemed as true all allegations contained in the Plan's request for admissions and having considered the Plan's memorandum in sup-

1. On the date that Meysenburg entered Ontario, it was owned by NME Hospitals, Inc. (NME), and did business as Ontario Community Hospital. Subsequently, NME and Tenet Healthcare Corporation (Tenet) merged with NME and assigned its right to collect Meysenburg's account to Tenet, also doing business as Ontario Community Hospital.

2. Ontario's amended answer states, "By filing this amendment, defendant is in no way waiving its motion to dismiss for lack of subject matter jurisdiction or personal jurisdiction or its motion to change venue, but is instead attempting to comply with the Court's schedule."

port of its motion and the record, this court granted summary judgment to the Plan.

Meanwhile, Meysenburg's account at Ontario was assigned to Syndicated Office Systems (Syndicated), a wholly owned subsidiary of Tenet Healthcare Corporation, and on October 25, 1995 and January 8, 1996, a representative from Syndicated's legal department wrote KLLM and Fox–Everett, Inc.[3] requesting payment of the balance due and advising that if payment was not tendered, an outside counsel would be retained to pursue the matter. In response to these letters, the Plan filed a declaratory judgment suit against Ontario on November, 28, 1995 in the Southern District of Mississippi. On three occasions, Magistrate Judge James C. Sumner issued a summons for Ontario Community Hospital,[4] two of which were returned unexecuted and a third which, based on court records, apparently was never returned. As the Plan failed to serve Ontario with process, it requested and was granted an order dismissing its action against Ontario without prejudice.

Prior to this court's entering summary judgment against Meysenburg in May 1996, Ontario retained Edward Butaky, a Louisiana attorney, to collect the debt it alleged to be owed by the Plan. Though both parties agree that in late April 1996, Butaky and Shan Thompson (Thompson), an attorney for the Plan, had a telephone conversation regarding the alleged debt and Ontario's efforts to collect said debt, from affidavits submitted by both attorneys, it is clear that they disagree sharply as to the substance of the conversation. Thompson alleges that Butaky expressed Ontario's desire to intervene in the then pending action against Meysenburg. Moreover, Thompson states that Butaky, on Ontario's behalf, not only consented to personal jurisdiction in the Southern District of Mississippi, but also agreed to accept service of process. Butaky, although admitting he agreed to accept service of process, denies that he waived subject matter or personal jurisdiction, or that he consented to suit in this venue. This suit was thereafter filed on May 24, 1996. The court will now in turn consider Ontario's arguments as to lack of subject matter and personal jurisdiction and its alternative motion for a change of venue.

The Plan alleges jurisdiction exists pursuant to 29 U.S.C. § 1132(e), 28 U.S.C. § 1331 and 28 U.S.C. § 2201, the Declaratory Judgment Act.[5] Ontario, in both its brief in support of its motion and its rebuttal brief, argues that as the Plan is a fiduciary, rather than a beneficiary or participant, under ERISA, it may not bring an action for declaratory relief under § 1132(a)(3) and thus, may not avail itself of § 1132(e)(2) which provides for nationwide service of process and for venue where the plan is administered or where the breach occurred. This being the case, Ontario concludes that this court lacks both subject matter and personal jurisdiction and that venue necessarily is not proper. As to the Plan's contention that federal question jurisdiction exists under 28 U.S.C. § 1331, Ontario argues that because there is no right to a declaratory judgment under ERISA, no federal question exists. Finally on the issue of subject matter jurisdiction, Ontario maintains that the Plan should not be allowed to use the Declaratory Judgment Act to circumvent the intent of ERISA, which precludes a direct action by the Plan in this instance. It thus urges the court not to find subject matter jurisdiction under the Act.[6]

---

3. Fox–Everett, Inc. is apparently the local administrator of KLLM's plan.

4. The first summons was issued on November 28, 1995 and apparently purported to serve process on Ontario's predecessor in interest. The unexecuted summons was returned on January 12, 1996. On the same day, the Plan filed an amended complaint and an alias summons was issued for Ontario. It was returned unexecuted on January 16, 1996. The same day, the magistrate judge issued the second alias summons.

5. The Plan's original complaint did not allege subject matter jurisdiction pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act. On October 1, 1996, Magistrate Judge Alfred G. Nicols granted the Plan's motion to amend the complaint to include the allegation of subject matter jurisdiction pursuant to the Act and the amended complaint was filed on October 10, 1996.

6. Ontario additionally argued that the Plan should not be permitted to amend its complaint. This contention was obviously mooted by Magistrate Judge Nicols' October 1, 1996 order allowing the Plan to amend its complaint.

The court agrees with Ontario that 29 U.S.C. § 1132(e)(1) does not confer subject matter jurisdiction. That section states

Except for actions under subsection (a)(1)(B) of this section, the district courts ·of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

Subsection (a) of § 1132 designates those who are empowered to bring civil actions. The Plan contends that subsection (a)(3)(B) allows it to bring this action. This section states that "[a] civil action may be brought by a participant, beneficiary, or fiduciary to ... (B) obtain other appropriate equitable relief ... (ii) to enforce any provisions of this subchapter or terms of the plan." Essentially, the Plan's argument is that by seeking a declaratory judgment as to the application of the plan's pre-existing condition exclusion, it is pursuing equitable relief in an effort to enforce the terms of the plan so that jurisdiction under ERISA is entirely appropriate. The court, having examined the language of the statute, disagrees.

■■■ "An action for declaratory relief can be either legal or equitable, depending upon whether the action is simply an inverted lawsuit for legal relief or the counterpart of a suit in equity." *Chevron, U.S.A., Inc. v. Oubre,* 93 F.R.D. 622, 623 (M.D.La.1982). Thus, in determining whether the Plan's declaratory judgment action is legal or equitable, the court must "examine[ ] the basic nature of the issues involved to determine how they would have arisen had Congress not enacted the Declaratory Judgment Act." *Wallace v. Norman Indus., Inc.,* 467 F.2d 824, 827 (5th Cir.1972). *See Connecticut*

*General Life Ins. Co. v. Cole,* 821 F.Supp. 193, 197 (S.D.N.Y.1993) (stating that "[i]f the underlying controversy is 'legal' rather than 'equitable', a declaratory judgment will be considered a form of legal relief"). In the instant case, it is apparent from Ontario's counterclaim that its claim to benefits is based on the contractual relationship between Meysenburg and the Plan, the court therefore concludes, as did the *Connecticut General* court, · that "[s]ince a contractual claim to benefits is a legal claim, the declaratory judgment [the Plan] seeks is a form of legal, [not equitable], relief." 821 F.Supp. at 197.

Furthermore, the Plan has not persuaded the court that this declaratory judgment action, equitable or not, is one to "enforce" provisions of the plan so as to bring it within the purview of § 1132(a)(3)(B)(ii). On this point, the court agrees with the reasoning of the court in *Transamerica Occidental Life Insurance Company v. DiGregorio,* 811 F.2d 1249, 1252 (9th Cir.1987). There the court found two instances in which "a declaratory judgment may be said to 'enforce' ... the terms of an ERISA plan"—first if the action attempts to establish "the primacy of an ERISA obligation over some independent, potentially conflicting state law duty," and secondly, if the action seeks to establish "that the party against whom it is brought" has an obligation under ERISA which it is allegedly disregarding. *Id.* The instant case is likened to neither of these categories. As in *Transamerica,* "the truth of the matter is that [the Plan] seeks a federal forum to interpret its contract." *Id.* This being the case, what the Plan desires is more in the nature of a clarification of its obligation to pay benefits under the contract.[7] As § 1132(a)(3) does not give a fiduciary the authority to file suit seeking a clarification of

---

7. Numerous courts have distinguished between suits "to enforce" an ERISA term as allowed by § 1132(a)(3) and those which seek to interpret or clarify a policy. *See Connecticut Gen. Life Ins., Co.,* 821 F.Supp. at 197. ("An action to clarify one's obligations as an insurer is not a suit to 'enforce' the terms of an ERISA plan"); *Reynolds v. Stahr,* 758 F.Supp. 1276, 1280 (W.D.Wis. 1991) ("the term 'enforce' does not encompass an action to determine the propriety of a denial

of benefits"); *cf. Prudential Ins. Co. v. Doe,* 76 F.3d 206, 210 (8th Cir.1996) (stating that "[defendant] may be correct that nothing in ERISA grants a fiduciary the authority to file a declaratory judgment action to interpret a policy"); *Gulf Life Ins. Co. v. Arnold,* 809 F.2d 1520, 1523 (11th Cir.1987) (finding that § 1132(a)(3)(B)'s essential purpose is to enforce the terms of a plan and that "all [plaintiff] needed to do to enforce the terms of the plan ... is deny payment").

its rights under the plan,[8] the court concludes that subject matter jurisdiction is not conferred by § 1132(e).[9] However, after considering the Plan's alternative arguments for subject matter jurisdiction, the court agrees with the Plan that its action may be maintained under the Declaratory Judgment Act as a federal question is presented.[10]

■ In order to "ascertain the presence of federal jurisdiction in a declaratory judgment action, it is necessary [for the court] to determine whether the defendant against whom declaratory judgment is sought could have asserted his rights in federal court." *Transamerica*, 811 F.2d at 1253. Thus, " 'if ... the declaratory judgment defendant could have brought a coercive action to enforce his rights, then [the federal court has] jurisdiction.' " *Id.* (quoting *Janakes v. United*

*States Postal Serv.*, 768 F.2d 1091, 1093 (9th Cir.1985)). It is, therefore, necessary to determine whether Ontario could have maintained its coercive action against the Plan in federal court. Based on the following, the court concludes that an action by Ontario against the Plan could have been brought in federal court.

■ Under 28 U.S.C. § 1331 district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws and treaties of the United States." Federal question jurisdiction supports not only those claims of a statutory origin but also those "founded upon federal common law." *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972). Thus, the inquiry in the present case

8. Compare § 1132(a)(3) to § 1132(a)(1)(B) which states, "A civil action may be brought by a participant or beneficiary to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to *clarify* his rights to future benefits under the terms of the plan." (emphasis added).

9. For the reasons previously stated, the court disagrees with the conclusion reached by the Seventh Circuit in *Winstead v. J.C. Penney Co., Inc.*, 933 F.2d 576, 580 (7th Cir.1991). Though not inquiring as to whether the declaratory plaintiff's action was legal or equitable in nature, the *Winstead* court found that allowing an ERISA plan to bring a declaratory judgment suit to determine the extent of its liability "did no semantic violence to section 1132(a)(3)."

The court further notes that the Seventh Circuit's later opinion in *Massey Ferguson Division of Varity Corporation v. Gurley*, 51 F.3d 102, 103 (7th Cir.1995), seemingly limits the *Winstead* holding to the narrow class of cases in which one insurer sues another to determine which insurer has the primary obligation. After citing approvingly both *Transamerica* and *Gulf Life*, the *Massey* court stated that "[o]ur opinion in *Winstead* ... holds that § [1132](a)(3) may be used to coordinate related plans' conflicting or overlapping provisions. Yet only one plan is involved in this dispute—and it is not even a party." *Id.* Thus, it is not clear that the Seventh Circuit would apply the *Winstead* rationale to the instant case.

Moreover, the court notes that the reasoning in *Transamerica* is consistent with the Fifth Circuit's statement in *Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1288 (5th Cir.1988), *appeal after remand*, 959 F.2d 569 (5th Cir.1993), that "the silence of ERISA's legis-

lative history concerning the scope of §§ 1132(a) and (e)(1) indicates that it should be considered an exclusive jurisdictional grant." The court in *Hermann* denied a third-party health care provider standing to sue under § 1132(e) of ERISA on its claims asserted independent of its status as the insured's assignee and found that the various state law claims asserted by the plaintiff were preempted by ERISA. The *Hermann* court, however, did not determine whether the plaintiff's preempted state law claims would be recharacterized as "arising under federal" law so as to present a federal question which conferred subject matter jurisdiction on the court.

10. As 28 U.S.C. § 2201, the Declaratory Judgment Act, does not provide an independent basis of jurisdiction but rather, "provide[s] additional remedies where jurisdiction independently already exists," *Harris v. United States of America*, 820 F.Supp. 1018, 1021 n. 2 (N.D.Miss.1992), *aff'd*, 19 F.3d 1090 (5th Cir.1994), the court rejects the Plan's argument that the Act, in and of itself, confers subject matter jurisdiction.

The court further notes that in each of the three cases—*Prudential Ins. Co. of America v. Doe*, 76 F.3d 206 (8th Cir.1996), *Transamerica*, 811 F.2d 1249 (9th Cir.1987), and *Reynolds v. Stahr*, 758 F.Supp. 1276 (W.D.Wis.1991)—cited by the Plan for the proposition that the Act grants subject matter jurisdiction, the declaratory judgment defendant was either a participant or beneficiary of an ERISA plan and thus "ERISA would have permitted [each] to sue on [his] claim in federal court." *Transamerica*, 811 F.2d at 1253. In the present case, the declaratory defendant is a third party health care provider and is obviousiy not a plan beneficiary, participant or even a fiduciary. Thus an independent basis for jurisdiction, other than § 1132(e), must

becomes whether Ontario's counterclaim is founded on federal common law.

To resolve this question, the court looks first to § 1144(a) of ERISA which provides that "the provisions of this subchapter and subchapter III ... shall supersede any and all State laws insofar as they may now or hereafter relate to an employee benefit plan." It follows then that "if a state law 'relates to' an employee benefit plan, it is preempted by ERISA." *Cornett v. Aetna Life Ins. Co.*, 933 F.Supp. 641, 643 (S.D.Tex.1995). Furthermore, "to the extent that [the state laws] relate to [ERISA] plans, ERISA preempts common law contract and tort claims based upon the laws of general application." *Id.* However, the court observes that the mere fact that a party's state law claim is preempted by ERISA "does not necessarily require that the court dismiss [its counterclaim]. Rather, once the court concludes that the claim[ ] [is] preempted, the court is to recharacterize [it] as [a] claim[ ] arising under

ERISA." *Williams v. Jackson Stone Co.*, 867 F.Supp. 454, 459 (S.D.Miss.), *aff'd*, 85 F.3d 621 (5th Cir.1994), *cert. denied*, —— U.S. ——, 117 S.Ct. 97, 136 L.Ed.2d 52 (1996) (citing *Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir.1989) (preemptive effect of ERISA effectively recharacterizes state law claims into actions arising under federal law)).[11]

The Fifth Circuit in *Memorial Hospital System v. Northbrook Life Insurance Company*, 904 F.2d 236, 245 (5th Cir.1990),[12] identified two unifying characteristics of preempted state law causes of action: First, a preempted claim addresses "areas of exclusive federal concern, such as the right to receive benefits under the terms of the ERISA plan," and secondly, "the claim[ ] directly affect[s] the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Id.*

---

exist in order for the Plan to survive Ontario's motion to dismiss.

**11.** The court recognizes that both *Williams* and *Degan* are factually distinguishable from the instant case, in that plan participants or beneficiaries, and not third-party providers, alleged state law claims. The court, however, concludes that the reasoning in these cases is equally applicable to the case at bar for reasons which will be more fully developed *infra*.

**12.** In *Memorial*, the Fifth Circuit upheld the district court's grant of summary judgment dismissing the plaintiff hospital's contractual claim against the defendant insurer. 904 F.2d at 243. However, the Fifth Circuit ordered the district court to vacate the portion of its judgment wherein the lower court found that the hospital's claim based on a violation of the Texas insurance code was preempted. *Id.* at 250. The Fifth Circuit found that the claim, brought independent of the hospital's status as an assignee of the insured, was not sufficiently related to an ERISA plan so as to be preempted. *Id.*

The hospital's contractual claim was based on its status as an assignee of the insured and the court characterized such a claim as derivative in nature which entitled the hospital to pursue only those rights enjoyed by the insured. *Id.* The court commented that "[s]uch derivative claims invoke the relationship among the standard ERISA entities and clearly relate to the plan for preemption purposes." *Id.* (citing *Hermann*, 845 F.2d at 1290) (concluding that an assignee of the insured has standing to sue insurer under 29 U.S.C. § 1132(a)). Additionally, the court recognized that derivative suits fall within the enforce-

ment scheme of ERISA, "which Congress intended to be the exclusive vehicle for suits by a beneficiary to recover benefits from a covered plan." *Id.* (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63, 107 S.Ct. 1542, 1545–46, 95 L.Ed.2d 55 (1987)). The issue of recharacterization of the preempted contractual claim was not considered by the *Memorial* court.

Ontario's counterclaim is unclear as to why the contractual relationship between Meysenburg and the Plan provides Ontario with a basis for recovery. The counterclaim states in pertinent part,

During October and November, 1993, NME Hospitals, Inc. dba Ontario Community Hospital sold and delivered to Larry Meysenburg, at Larry Meysenburg's special instance and request, certain medical merchandise and services at agreed prices. Said Larry Meysenburg accepted and used said merchandise or services and became indebted unto NME Hospitals, Inc. dba Ontario Community Hospital for the price thereof.

Plaintiff/counter-defendant is and was the health care insurer for said Larry Meysenburg and as such became indebted to NME Hospitals, Inc. dba Ontario Community Hospital for the indebtedness of Larry Meysenburg for such medical treatment.

Because the submissions of the parties do not reveal whether Ontario asserts its counterclaim as an assignee of Meysenburg, the court cannot conclude as a matter of law that, per *Hermann*, subject matter jurisdiction exists under § 1132(a). Therefore, the court will analyze the counterclaim under the principles stated in *Me-*

■ Both characteristics are present in the instant case—first, Ontario's counterclaim undeniably is based on its or Meysenburg's right to receive payments under the terms of the ERISA plan; secondly, where Ontario has alleged that as a result of Meysenburg's indebtedness, the Plan is also indebted, its counterclaim necessarily implicates and affects the relationship between traditional ERISA entities. Based on the foregoing, the court concludes that Ontario's counterclaim, asserted on the basis of the contract between Meysenburg and the Plan, relates to an ERISA employee welfare benefit plan. Accordingly, Ontario's counterclaim is preempted[13] and recharacterized as one arising under federal law, which necessarily presents a federal question under § 1331. See Degan, 869 F.2d at 894. Having found that Ontario could have brought its coercive action in federal court, the court further finds that subject matter jurisdiction is conferred on this court by the Declaratory Judgment Act and accordingly, Ontario's motion to dismiss for lack of subject matter jurisdiction will be denied. The court next addresses the issue of personal jurisdiction over Ontario.

The Plan alleges that this court not only has personal jurisdiction over Ontario pursuant to 29 U.S.C. § 1132(e),[14] but also because Ontario has consented to personal jurisdiction and has specific contacts with the forum state which relate to the cause of action. Ontario disputes the Plan's assertion that personal jurisdiction exists as Ontario neither consented to personal jurisdiction as alleged by the Plan, nor does Ontario have sufficient minimum contacts with the state of Mississippi. In support of these contentions, Ontario has presented Butaky's affidavit in which he denies that he consented to personal jurisdiction and the affidavit of Charles Deane, Senior Vice–President for Syndicated Office Systems, in which he testifies that "[t]o his knowledge, [Ontario] has no contact of any nature with the state of Mississippi."

■ The Plan bears the burden of establishing this court's personal jurisdiction over Ontario. See Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985). Additionally, where a court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff's burden is met by setting forth a prima facie case for jurisdiction. Id. Furthermore, the court must accept as true "[t]he allegations of the complaint, except insofar as controverted by opposing affidavits, ... and all conflicts in the facts must resolved in favor of [the Plan] for purposes of determining whether a prima facie case for personal jurisdiction has been established." Id. Having reviewed the affidavits and other exhibits submitted by the parties, the court concludes that the Plan has presented a prima facie case of personal jurisdiction.[15]

As has been previously indicated, the parties are in dispute as to whether Butaky consented to personal jurisdiction by this court. Thompson in his affidavit maintains

---

morial to determine if it "relates to" an ERISA plan.

**13.** As has been previously noted, the court cannot divine the exact basis on which Ontario asserts that it is entitled to benefits under the plan. It is, however, apparent that resolution of this issue will require resort to common law contractual principles of general application. See Degan, 869 F.2d at 893.

**14.** Having concluded that subject matter jurisdiction does not exist pursuant to § 1132(e), the court agrees with Ontario and concludes that the Plan may not utilize the provision in § 1132(e) allowing nationwide service of process or the section's liberal venue provision.

**15.** Though the Plan argues that Ontario has sufficient minimum contacts with the State of Mississippi thereby allowing this court to exercise specific jurisdiction over Ontario, the court disagrees. The Plan enumerates Ontario's contacts as follows: 1) while treating Meysenburg, its personnel called the Plan to verify coverage and seeking payment; 2) its legal representative mailed at least two letters to the Plan; and 3) its attorney Butaky made phone calls and mailed letters to the Plan (The Plan's assertion that Butaky agreed to pursue Ontario's claims in this court will be discussed infra).

Though recognizing that "[a] single act by the defendant directed at the forum state ... can be enough to confer personal jurisdiction," the court cannot conclude that the acts in question "[gave] rise to the claim being asserted." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 418–19 (5th Cir.1993). In the instant case, none of the acts listed by the Plan gave rise to Ontario's claim, which is based on the contractual relationship between Meysenburg and the

that Butaky, on Ontario's behalf,[16] agreed both to personal jurisdiction and to service of process. Butaky denies consenting to personal jurisdiction but admits that he agreed to receive service of process on Ontario's behalf. In accordance with *Thompson*, the court resolves this factual dispute in favor of the Plan. This necessarily means that the court accepts the following as true: 1) Butaky informed Thompson that Ontario wanted to intervene in the Plan's declaratory judgment action against Meysenburg; 2) Thompson and Butaky agreed that the Plan would refile its suit against Ontario, thus allowing Ontario to pursue its claim against the Plan; and 3) Butaky agreed to accept service of process on behalf of Ontario.

Ontario, in its rebuttal brief, states that Butaky did not have the authority to consent to jurisdiction on behalf of Ontario. This assertion simply does not comport with the prima facie case established by the Plan. It is improbable that Ontario, having once avoided suit because the Plan could not serve process, would then allow its agent the authority to accept process [17] in a suit which it maintains now cannot be brought in federal court. Ontario had nothing to gain by accepting process, if it did not intend to become a part of the Plan's action pending against Meysenburg. Considering this, the court,

having found that the Plan has presented a prima facie case of the court's personal jurisdiction over Ontario, concludes that Ontario's motion to dismiss for lack of personal jurisdiction will be denied. The court now addresses Ontario's alternative motion for change of venue.

Ontario argues that as personal jurisdiction is lacking, venue is proper in California where the medical services were rendered and where the majority of the witnesses, i.e., doctors, reside.[18] Ontario further argues that in the event that "the [c]ourt finds jurisdiction under Section 1331 or Section 2201, venue is controlled by 28 U.S.C. Section 1391," which Ontario asserts necessarily prescribes California. The Plan, on the other hand, contends that venue in the United States District Court for the Southern District of Mississippi is proper pursuant to 29 U.S.C. § 1132(e)(2) because the plan is administered in the Southern District of Mississippi and the alleged breach of the plan occurred here. Moreover, the Plan asserts that Ontario has failed to meet its burden of demonstrating that venue should be transferred. The court agrees that Ontario has not met its required burden and therefore its motion for transfer of venue will be denied.

Plan, and therefore had nothing to do with Ontario's contacts with the forum state.

**16.** Thompson, in his affidavit, testifies that he was advised by Butaky that Butaky had been retained to collect the benefits owed under the plan and that Ontario was aware of the action pending against Meysenburg and desired to intervene. Thompson further states that he informed Butaky of the previously dismissed declaratory judgment action against Ontario and then explained that the Plan would be willing to refile its suit against Ontario if Butaky would accept service of process as Ontario's agent, thereby allowing Ontario to move to consolidate the two suits. Thompson also maintains that Butaky, on behalf of Ontario, agreed both to having the Plan refile its declaratory judgment action against Ontario and to accepting service on Ontario's behalf. To support Thompson's version of the conversation between the two attorneys, the Plan submitted a May 15, 1996 letter from Butaky to Thompson, the pertinent portion of which states, "Secondly, I agree that possibly the best way to bring my client into the captioned litigation would be for you to re-file your Complaint against my client then consolidate the two cases." The Plan asserts that pursuant to

this agreement with Ontario, it filed this declaratory judgment action.

Butaky in his affidavit agrees that he and Thompson did discuss the fact that a declaratory judgment action was pending against Meysenburg and also the fact that the Plan had previously attempted to bring suit against Ontario but had been unsuccessful because process could not be served. Butaky testifies, contrary to Thompson's assertion otherwise, that he "[o]n behalf of the defendant, [] did agree that if the defendant [sic] desired to refile its declaratory judgment action, it could send the notice of service of process to my office and that I would see that it was received by the defendant." Butaky, however, denies that he agreed to waive venue, subject matter or personal jurisdiction.

**17.** Ontario has not alleged that the process served upon Butaky on its behalf was in any way defective.

**18.** The court notes that while Ontario takes the position that venue in this forum is not proper, its motion is for change of venue, and not a Rule 12(b)(3) motion to dismiss on the basis of improper venue.

Initially, the court observes that venue in the Southern District of Mississippi is proper pursuant to 28 U.S.C. § 1391(b) and (c). Section 1391 provides in pertinent part,

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

The foregoing clearly indicates that if Ontario as a defendant corporation was subject to this court's personal jurisdiction at the time the suit was commenced, then for purposes of § 1391, Ontario is deemed to have resided in the Southern District of Mississippi. Having established that personal jurisdiction exists, the court likewise concludes that venue in this district is also proper.

Section 1404(a) of Title 28 "authorizes the court to transfer any action to any district in which it might originally have been brought 'for the convenience of the parties and the witnesses, and in the interests of justice.'" *Medical Assurance Co. of Miss. v. Jackson*, 864 F.Supp. 576, 580 (S.D.Miss.1994). Ontario bears the burden of demonstrating that transfer is proper. *Id.* Ontario's prime reasons in support of its motion to transfer are that medical services were rendered in California, that "all actions regarding any claim by the Defendant against the plan occurred in California" and that the majority of the witnesses reside there. The Plan, however, counters that "most, if not all, of the fact witnesses which will testify in this action are located in or near Mississippi," that "[a]ll of the persons with knowledge of the Plan's provisions as well as the administration of the Plan are located in Jackson, Mississippi," and that all the medical professionals it relied upon in denying coverage are located in Mississippi. As this court indicated in *Medical Assurance*, "transfer under § 1404(a) is not proper where the effect of a transfer will be merely to shift the burden of inconvenience from one party to another." 864 F.Supp. at 580. For this reason, Ontario's motion for a change of venue will also be denied.

For the foregoing reasons, it is ordered that Ontario's motion to dismiss for lack of subject matter and personal jurisdiction is denied. Likewise, Ontario's alternative motion for a change of venue is also denied.

